## IRVINE *v.* DUNHAM.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

Argued March 31st, April 1st, 1884.—Decided April 14th, 1884.

### *Trust.*

On the facts in this case the court finds that the deed in controversy was not a mere gratuity and left in escrow; but that it was delivered, and imposed upon the appellant a trust in favor of the grantor of the appellee to which the appellee has succeeded.

When a trustee denies the trust and refuses to perform it a court of equity will appoint a new trustee in his place, and the old trustee will not be entitled to retain the property under cover of having an account as trustee, before paying over the net proceeds.

The bill of complaint in this case was filed by Dunham, the appellee, against Irvine, the appellant. It averred that on March 28th, 1874, Irvine and one Richard H. Sinton were the joint and equal owners of one undivided half of the Morgan Mine in Calaveras County, in the State of California; that the legal title to such undivided half was vested in Irvine, but was held by him in trust for himself and Sinton equally, share and share alike; that the undivided half of the mine had been ac-

quired by Irvine and Sinton by their common efforts and at their common expense, and pursuant to an agreement between them to acquire the title thereto and sell and otherwise dispose of the same, and share equally the profits and losses. The other undivided half of the mine was, so the bill alleged, held by Irvine in trust for certain other persons.

The bill further alleged, that on the said March 28th, 1874, Irvine executed to Sinton an instrument and declaration of trust in writing of that date, of which the following is a copy:

"This is to declare that I, William Irvine, of San Francisco, California, am the owner of one undivided half of that certain gold-bearing quartz lode or mine situated on Carson Hill, Calaveras County, California, and known familiarly as the 'Morgan Mine,' and that I hold said half interest equally for myself and R. H. Sinton, also of San Francisco, share and share alike; and I hereby promise and bind myself, my heirs and assigns, whenever said mine shall be sold or otherwise disposed of, to account fully and truly to said Sinton, his heirs or assigns, for the one-half of all net proceeds of such sale or other disposition of said half interest.

"All necessary expenses, including counsel fees heretofore incurred, or that may hereafter be incurred, in and about the property, up to the time of such sale or other disposition thereof, to be first paid before division of such proceeds.

"Witness my hand and seal, this 28th day of March, A.D. 1874.

"WILLIAM IRVINE. [Seal.]

"Witnesses:
    "T. K. WILSON.
    "H. J. TILDEN."

The bill also averred, that on September 8th, 1874, Sinton assigned and conveyed to one George P. Ihrie all his right and title in the mine, and declaration of trust, and everything coming or that might come to him by virtue thereof, that on March 17th, 1875, Irvine, and the owners of the other undivided half of the mine, organized under the laws of California a corporate body called the Morgan Mining Company, and that on April 9th following, Irvine and the other persons having an interest in the mine, except Ihrie, sold and conveyed

the same to the corporation, and received in consideration thereof shares of stock in the company, in proportion to their interest in the property conveyed, Irvine receiving ten thousand shares for the undivided half held by him for himself in trust and for Ihrie, as the grantee of Sinton, and that Ihrie then and there became entitled to the one-half of the ten thousand shares.

It was further alleged, that on June 29th, 1875, Ihrie conveyed all his title and interest in the mine and in the five thousand shares of the stock of the Morgan Mining Company to Dunham, the complainant, for whose use and benefit Irvine held the shares subject to the payment of the expenses, &c., mentioned in the declaration of trust.

The bill further alleged, that after the conveyance by Ihrie of his interest in the stock of the Morgan Mining Company to complainant, the latter applied to Irvine for an account of the necessary expenses and fees incurred by him in and about the mine up to the conveyance thereof to the company, and offered to pay him one-half thereof, and demanded a transfer to himself of the shares of stock in the company held in trust for him by Irvine, but Irvine refused to render any account, denied the complainant's right to the stock or any part of it, denied that he held any stock in trust for complainant, and claimed all of the ten thousand shares as his own, and denied that he was ever trustee in the premises for Sinton, or Ihrie, or the complainant.

The bill further averred that the complainant was ready, and that he then offered to pay into court, the one-half of all the expenses and fees paid by Irvine, on account of the mine, up to the conveyance thereof to the Morgan Mining Company, and such further sums as the court might deem equitable and just; that Irvine had it in his power to transfer the stock held in trust by him for the complainant to a *bona fide* purchaser, for value, without notice, and that he would do so unless restrained by injunction.

The prayer of the bill was that Irvine be decreed to hold in trust for the complainant said five thousand shares of the capital stock; that the court would declare what sum was

justly due to Irvine from the complainant on account of the necessary expenses, &c., incurred by him in and about the mine, and that upon the payment of the same by complainant to Irvine the latter might be decreed to assign and transfer said five thousand shares to him.

The answer of Irvine denied that Sinton was ever the owner of an undivided fourth of said mine, or of any share or interest therein or any part thereof; denied that Irvine ever held the legal title to the mine or to any part or share thereof, in trust for himself and Sinton; denied that the undivided half thereof was acquired by himself and Sinton by their common efforts and at their common expense for their equal benefit, but averred that he acquired said undivided half for his own sole and exclusive use and benefit, and that Sinton contributed neither effort nor expense towards its acquisition.

The answer further averred that Irvine, on March 28th, 1874, being about to leave California for a trip to the Atlantic States, to be absent for several months, signed the declaration of trust as a mere gratuity to Sinton, upon the express agreement between him and Sinton that the same should be left in the custody of T. K. Wilson, who was Irvine's attorney, and that it was not to take effect except in case of the death of Irvine upon his proposed journey, and in case he should return to California that the instrument should be delivered up to him; that the instrument was never in any manner delivered to Sinton, and that Irvine, after so signing it, did perform his journey and returned therefrom to the State of California in the month of August, 1874. The answer of Irvine was put at issue by general replication.

Upon final hearing the Circuit Court decreed that Irvine hold as trustee, for the use and benefit of the complainant, the one-half of 9,997 shares of the capital stock of the Morgan Mining Company, the shares being the gross proceeds received by Irvine as the consideration of a conveyance and disposition by him to the Morgan Mining Company of one-half of the mining property, the half of the stocks so held by Irvine in trust for the complainant being subject to a claim of Irvine for one-half of all the necessary expenses referred to in the decla-

ration of trust, and of assessments on said stock made by the Morgan Mining Company and paid by Irvine. And the court confirmed the report of the master to whom the case had been referred, finding that the one-half of the expenses and assess-ments paid by Irvine was $14,221.76; and decreed that upon the payment of that sum by the complainant to Irvine, the lat-ter should assign and transfer to complainant 4,998½ shares of the capital stock of the Morgan Mining Company. From this decree Irvine appealed.

*Mr. Geo. W. Towle, Jr.,* and *Mr. James M. Johnston* for appellant.

*Mr. Shellabarger* for appellee.

MR. JUSTICE WOODS delivered the opinion of the court. He stated the facts in the foregoing language and continued:

It is not disputed that the appellee has succeeded to all the rights of Sinton and Ihrie, if they had any, set forth in the bill of complaint. The question of fact at issue between the parties is, whether or not before the conveyance by the appellant to the Morgan Mining Company of the Morgan Mine, he held the title to an undivided fourth of the mine in trust for Sinton.

The declaration of trust signed by Irvine on March 28th, 1874, unless impeached, is evidence which settles this question conclusively in favor of the appellee. The appellant, however, contends, as appears from his answer and testimony, that his promise to hold one-fourth of the mine in trust for the com-plainant was a mere gratuity; that Sinton never paid any money or rendered any services in obtaining title to the mine; that the declaration of trust was never delivered, and that it was to take effect and bind him in case he never returned from proposed journey. The burden is on the appellant to make this appear.

It is shown by the record that in December, 1869, or Janu-ary, 1870, the appellant purchased at a tax sale the title to the Morgan mine, that he received a deed therefor dated June 29th, 1870, from the sheriff, and was put in possession of the property by a writ of assistance. Prior to the purchase at the

tax sale James G. Fair and A. A. Selover had been in possession of the mine ; they claimed that Irvine had purchased the mine at the tax sale for them. Irvine demanded a large sum for his services, and after some delay gave them notice that if they did not accede to his demand he would hold the title for himself. Fair and Selover never paid the sum demanded by appellant, or any part of it, and appear to have abandoned all claim to the property. About this time, Henry D. Bacon and his associates, seven in number, were claiming title to the mine. On April 14th, 1873, they compromised their controversy with the appellant by an agreement that he should apply for a patent for the property in his own name, and, having obtained it, should sell the property and divide its proceeds, retaining one-half himself and turning over the other half to Bacon and his associates. The appellant accordingly applied for and obtained a patent in his own name for the property. When the Morgan Mining Company was formed, and the mine was conveyed to it, Bacon and his associates got half the stock in consideration of their interest in the mine held in trust for them by the appellant, who received the other half of the stock.

Without going into a discussion of the evidence, we state our opinion to be, after a careful examination of the record, that it is established by the testimony that Sinton, who was an experienced dealer in real property, contributed money and aided the appellant by his advice and co-operation in obtaining the tax title to the Morgan mine, and afterwards in getting the patent therefor from the United States, and in compromising the controversy between the appellant and Bacon and his associates in regard to the ownership of the mine; and that the money and services were contributed by Sinton on the agreement and understanding that he and the appellant were to share equally in the results of the enterprise. The fact that Sinton furnished the appellant money on account of the mine is found by the master to whom the case was referred, and no exception was taken to that part of his report. It is established that the appellant, after the compromise with Bacon and others, agreed to hold the title to the undivided half of the mine in trust for himself and Sinton, share and share alike,

subject to the payment of the proportion of such undivided half in the costs and expenses incurred in securing title to and managing the property. The declaration signed by the appellant on March 28th, 1874, was simply an admission in writing by him of the contract between him and the appellee in relation to their interest in the Morgan mine.

The contention of the appellant that the declaration of trust was a mere gratuity is not sustained by the proof. On the contrary, independently of the declaration, the testimony in the record establishes the trust and its terms, as set up in the bill. of complaint, and shows that the declaration of trust was not voluntary, but was based on a valuable consideration.

The appellant contends that the declaration of trust was put in the hands of Wilson as an escrow, to be delivered to Sinton only in case the appellant died on his proposed journey, and to be redelivered to the appellant in case he returned to California, and that as he did return, the declaration of trust became ineffectual to bind him. This contention amounts to this, that by accepting the declaration of trust upon the terms alleged by the appellant, Sinton agreed that if the appellant returned from his trip to the Eastern States, he would give up all claim to his share of the property. If such had been the agreement of the parties, they would naturally have embodied it in the written instrument. It contains no such stipulation. It is an unqualified and unconditional admission by the appellant that he held the property in trust for Sinton and himself, and that when it was sold or disposed of, he would divide its net proceeds equally between Sinton and himself. We find no evidence in the record sufficient to sustain the improbable story that Sinton agreed, in case appellant should return in safety from his trip to the Atlantic States, that he would give up his interest in this valuable property, to secure which he had contributed money, and services extending over a period of several years. In other words, we do not find that the declaration of trust was subject to any such condition.

The next contention of the appellant is that the decree should be reversed, because there has been no sale or disposal of his property, and that by the terms of the trust Sinton

had only a right to the net proceeds after its sale or disposal.

But the record shows that the property had been disposed of by conveyance to the Morgan Mining Company. The deed of the appellant to the company effectually divested him of all title to the property. It became the property of the corporation, in which he retained no interest or estate. Mr. Justice Bradley, in *Morgan* v. *The Railroad Company*, 1 Woods, 15. The conveyance was, therefore, a disposal of the property, and whether the consideration was cash or shares of the capital stock of the company, was immaterial. The appellant having parted with the title to the property, was bound to account for its proceeds to the beneficiary of the trust according to the terms of the trust.

The appellant next contends that he is entitled, under the terms of the trust, to hold on to the stock, which he received as a consideration for the conveyance of the trust property, until there has been an accounting and the expenses and counsel fees have been paid. But by his answer he denies the trust, he claims to hold the stock for himself alone, he wants no accounting and does not offer to account, or to hand over any net proceeds of the property after an accounting. In other words, he seeks to hold on to the trust property until it suits him to execute a trust, the existence of which he denies.

Where there is a failure of suitable trustees to perform a trust, either from accident or from the refusal of the old trustees to act, or from their original or supervenient incapacity to act, or from any other cause, courts of equity will appoint new trustees. *Ellison* v. *Ellison*, 6 Ves. 656, 663; *Lake* v. *De Lambert*, 4 Ves. 592; *Hibbard* v. *Lamb*, Ambler, 309; 2 Mad. Pr. Ch. 133; Com. Dig. Chancery, 4 W. 7. No trustee can be more unsuitable than one who not only refuses to act, but denies the trust. When, therefore, appellant denied that he held in trust the stock claimed by the appellee, the latter, having established the trust, was entitled to have, if he demanded it, a new trustee appointed, or if the appointment of a new trustee were not necessary for the preservation of his rights, to have an account taken by the court of the expenses

and assessments with which his share of the trust property was chargeable, and upon their payment to have a transfer to himself of his share of the stock. The decree of the Circuit Court has given him these rights. There has been an accounting, and the sum with which the appellee's interest in the stock is chargeable has been ascertained, and when the sum so found is paid by appellee, and not till then, the decree of the court requires a transfer to him of his share of the stock. The decree of the court simply executes and winds up a trust, the existence of which it finds, but which the trustee denies and refuses to execute. Both parties got their rights under the decree. It must, therefore, be

*Affirmed.*