## MAY v. MAY.

TRUSTS AND TRUSTEES; POWER TO REMOVE TRUSTEES; PUBLIC
POLICY; COSTS ON APPEAL.

1. The grant of a power in a will to one of two trustees and the beneficiaries under trusts created thereby, to summarily remove the other trustee, is not against public policy; but its exercise is subject to review by a court of equity.
2. The existence of bitter and uncompromising dissensions in such a case, between one of the trustees and the donees of the power, such as to preclude personal intercourse, is sufficient cause to justify the removal of such trustee by the donees of the power, especially when the trusts are active ones in which the judgment and discretion of both trustees are necessary for their proper execution.
3. A court of equity will, under such circumstances, more readily sanction the removal of the trustee by the donees of the power, than it would grant an original application to remove a trustee for cause.
4. An application by a trustee appellant for allowance of costs and counsel fees, when the decree appealed from was affirmed, *denied.*

No. 392.   Submitted February 7, 1895.   Decided March 5, 1895.

HEARING on an appeal by the complainant from a decree ratifying the action of the defendants in removing complainant as trustee under a will.   *Affirmed.*

The COURT in its opinion stated the case as follows:

Dr. John Frederick May, of the city of Washington, in the District of Columbia, died in this city on May 1, 1891, leaving a will duly executed and bearing the date of February 4, 1890, and also two codicils thereto, one executed on March 27, 1891, and the other on April 23, 1891. He left a large estate, most of it being realty situated in the city of Washington, and a house in the city of New York. He also left surviving him his wife, the appellee Sarah Maria May,

and six children, all of age, namely, the appellant William May, who was the oldest, and the appellees Alice Beavor Webb (married) Edith Sybil Randolph (widow), Caroline Kane Wright (divorced), Julia May and Frederick May (both unmarried). By the will he devised and bequeathed all his estate, both real and personal, to his wife Sarah Maria May, her heirs and assigns, in trust for the purposes thereinafter named; which were so far as recited : 1. That his wife should receive at least the same provision to which she would be entitled by law under her right of dower, and therefore that she should receive one-third of the net annual income of his estate during her life, one-third of the personal property absolutely, and the use of the house in Washington in which they had resided during her life; 2. That the estate should be kept intact and no division made of it while any of his children lived, and that the rents and profits, except the thirds left to his wife, should be applied to the payment of his debts and the cancellation of any mortgage or incumbrance that there might be on the estate, and after the full payment of such debts and incumbrances, should be divided equally between all his children, subject to the disposition made in favor of his wife; 3. That, in the event of a sale by the trustee of any portion of the property, which sale the trustee was not to be precluded from making whenever it was manifestly for the benefit of the estate, the proceeds of sale should be reinvested in safe first mortgage on real estate. There was also a power given to the trustee to remortgage any portion of the estate that should be subject to mortgage at the time of the testator's death, in the event of inability to discharge the mortgage. And it was provided that, upon the death of any of his children, the share of such child should go to his or her issue, if there were any. There were some specific bequests of personal property not important to be here enumerated; and a special provision was made of a legacy to his daughter Julia in the event of her marriage. His wife was made executrix of the

will, as well as trustee; and she was exempted from giving bond in either capacity, and empowered to appoint a trustee to succeed her, if she should deem it best at any time so to do. This was the substance of the original will.

By the first of the two codicils which he added to his will shortly before his death, he associated his oldest son, the appellant William May, in the trusteeship with his wife. This codicil was as follows:

"I hereby appoint my son William May co-trustee with my wife Sarah Maria May, my said son and my wife to have and exercise the powers and authority in my said will mentioned and created, except as hereinafter otherwise directed. It is my further wish, and I hereby will and direct that my said son, William May, shall take charge of my real estate (except my present dwelling house, which shall be and remain in the exclusive charge of my wife during her life), and care for and manage the same for the best interests of my said estate and in accordance with the terms of my said will, and he shall collect the rents and income of my said real estate, and pay the lawful taxes and assessments, and other expenses thereon, and shall keep the same in good repair. It is my will and I so direct, that the taxes, insurance and repairs on my said dwelling house shall be paid out of the general income of my other real estate. For the said service of my son, William May, in caring for and managing said estate and for collecting the rents and paying the taxes and assessments, and other services, as hereinbefore directed, he shall and may retain from money so collected, as his compensation, a commission equal to five per centum of the amount of money by him collected from said estate, and the said William May shall render to my said wife full and true accounts of the rents by him collected, and of the disbursements by him made, in the execution of this trust, such accounts to be rendered each and every month, and shall be accompanied by the vouchers for such disbursements. After the death of my wife said accounts shall be

rendered to my other heirs. It is my will that no commissions shall be paid to my wife, as trustee.

"I hereby further will and direct that for good and sufficient cause my other heirs, with the concurrence of my wife, if she be living, shall have and they are hereby given the power, by their unanimous resolution, to remove my said son, William May, from his office as such trustee and to appoint another person in his stead. It is my wish that neither of my said trustees shall be required to give a bond or other security, in reference to the execution of the trusts created by my said will or this codicil."

The second codicil merely provided specifically for the payment of some debts arising from trust funds that had been placed in his hands; and is unimportant in the present controversy.

The will and codicils were duly admitted to probate by the Supreme Court of the District of Columbia, holding a special term for Orphans' Court business, on June 19, 1891, and administration of the personalty was committed to the widow, Sarah Maria May, as the executrix named in the will. That administration, it seems, had not been concluded when the present proceedings were begun, on May 2, 1892. The trustees forthwith entered upon the performance of their duties as such with regard to the real estate; and the appellant, William May, took immediate charge and control of the collection of the rents of the property and of its management.

Dissension, however, very soon arose between William May on the one side, and his mother, brother and sisters, on the other; and, as usual in such cases, the dissension became intense and bitter. There is in the record a painful disclosure of domestic discord which should have been avoided, and into the details of which we do not deem it necessary for the purposes of this case to enter. Even the filing of the bill of complaint in the cause, apparently and on its face a proper proceeding, was regarded by the other

parties as, under the circumstances, an unnecessary and wanton act of hostility dictated by ulterior motives on the part of the appellant.

This bill was filed on May 2, 1892. The principal purpose of it, in respect of the construction sought to be had from the court, was to determine whether the testator had not died intestate with regard to the bulk of his estate after the termination of the life estate devised to the widow. There was an intimation in it of the dissension that had arisen, and an allegation of embarrassment therefrom to the complainant, William May, in the execution of his duties as trustee. And the prayer of the bill was, in a general way, for the construction of the will, and for the further administration of the estate under the direction of the court.

The defendants answered the bill, and the burden of their several answers was that the complainant had misbehaved in his trusteeship by his intolerant and overbearing conduct, and by false and erroneous charges in his accounts, which necessitated the employment of an expert accountant to restate them.

After replication filed and before any testimony was taken, the hostility between the parties had become such that on November 25, 1892, all the children and heirs at law of the testator John F. May, other than the complainant and appellant William May, with the concurrence and co-operation of the widow Sarah Maria May, joined in the execution of an instrument of writing, purporting to be their unanimous resolution, in pursuance of the power given to them by the testator in the first codicil to his will, for the removal of William May from the trusteeship for good and sufficient cause. Seven causes, among others, were specified in the document, and these were, in substance, that the accounts rendered by the complainant were erroneous and untrue; that he had sought to have credit for items to which he was not entitled; that he had altered and falsified vouchers; that by his intolerable conduct he had made communica-

tion with him by his co-trustee impossible, and that he had been absent an unreasonable time from the District of Columbia. William H. Dennis, Esquire, a member of the bar of the District of Columbia, was designated in the resolution as the successor of the appellant in the trusteeship, and to him the appellant was directed to turn over the possession of the property, and all the books, papers, and documents appertaining thereto.

The resolution was signed in person by all those who purported to concur in it, except Frederick May, who was then absent in South America, and whose signature was appended to it by his mother, Sarah Maria May, under a power of attorney given to her by him to act for him in all matters appertaining to his father's estate. On May 8, 1893, after his return from South America, Frederick May executed another paper, which is found in the record, purporting to be a full ratification of his mother's action and of the proceedings that had been had in his name during his absence. When the resolution was communicated to William May, on December 28, 1892, he declined to comply with it, or to recognize its validity. And on January 3, 1893, he filed a petition in this cause, setting forth the attempt thus made to remove him, and praying for a restraining order against the defendants and against Mr. Dennis to prevent their interference with him in the execution of the trusteeship. The restraining order was issued, and remained in force until the final hearing of the cause.

Thereupon the defendants, on March 3, 1893, filed a cross bill against the appellant William May to procure the ratification of their action in removing him from the trusteeship, for an injunction against his further management, for the settlement of his accounts, and for the appointment of a receiver during the pendency of the suit. The application for a receiver under this cross bill was refused; but the appellant was required to give bond, which he accordingly gave, and the parties proceeded to take testimony. The burden

of this testimony was the manifestation of family difficulties and family discords, past and present, and the question of the conduct or misconduct of William May as trustee of the estate.

Upon the hearing of the cause, a decree was rendered ratifying the action of the defendants in their removal of the appellant, William May, from the trusteeship. The appellant was directed to deliver the estate and all that appertained to it to the substituted trustee, and to settle his accounts before the auditor; and he was enjoined and restrained from further interference with the trusteeship. There was no attempt in the decree to construe the will, except in one comparatively unimportant particular, with reference to the settlement of the appellant's accounts; and this was to the effect that the one-third of the net income of the estate provided by the will to be paid to the widow should not be subject to be diminished by deductions for the fund which was directed to be accumulated for the payment of the testator's debts and incumbrances on his real estate. From the opinion, which we find in the record, of the learned justice who signed the decree in the court below, we are advised that it was deemed premature at this time to enter into any further construction of the will.

William May, the complainant in the original bill and defendant in the cross bill, appealed from that decree to this court.

There are three assignments of error: 1. The refusal or failure of the court below to construe the will; 2. The removal of the appellant from the trusteeship; 3. The direction of the court below that the widow was to be paid one-third of the net income of the estate, without deduction on account of interest on the mortgages.

*Mr. W. D. Davidge* and *Mr. Robert Gilmor* for the appellant.

*Mr. Enoch Totten* and *Mr. W. H. Dennis* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

1. With reference to the first assignment of error, it does not appear that the court below has refused to construe the will, but has regarded it as premature so to do, before any exigency has arisen for such construction. And in this view we concur. It does not seem to us that the construction of the will is of any present practical importance, or that it is required until it becomes necessary to take some action under the will, and the action to be taken is rendered doubtful by the obscurity of the will.

2. It is conceded by counsel on both sides that the question of paramount importance in the case is that of the removal of the appellant from the trusteeship. To the determination of that question the testimony taken by the parties was mainly, if not exclusively, directed; and that is the question which is principally treated in the excellent and exhaustive opinion rendered in the case by the learned justice who heard it in the court below. The original purpose of the suit, a construction of the will, if such was in fact the original purpose, has become for the present a secondary consideration; and the personality of the trustee, who is to administer the trusts of the will, has become the principal and almost the sole subject of controversy.

We fully concur in the sentiment expressed by the learned justice below, that such differences between relatives as are manifested in this record are most regretable, and that courts should refrain as far as possible from magnifying the points of personal difference. It is satisfactory to feel, in the view which we take of this case, that it is wholly unnecessary for us to weigh the conflicting statements of the parties, or to determine any question of misconduct or moral delinquency on either side, if such there be, and that we may determine the controversy, so far as it is incumbent on us to determine it, without reference to the mutual recriminations of the parties.

By the codicil to his will the testator gave to his widow
and his heirs at law, other than the appellant William May,
the power to remove the latter from the trust which was
vested in him by the will and codicil, whenever they found
good and sufficient cause so to do, and their resolution to that
effect was unanimous. The right to have the trustee removed
is one which the heirs, or any one or more of them, would have
had through the instrumentality of a court of equity with-
out any such provision in the will. For good and sufficient
cause, any one beneficiary, even against the unanimous
wish of all the others, might procure the removal of a trustee
and the substitution of another in his place by a court of
equity. We must assume, therefore, that the testator in this
instance intended to vest in the designated heirs a power or
a right which they did not have by law; and that power
or that right was to determine for themselves, at least in
the first instance, without the need of recourse to a court of
equity, what should constitute good and sufficient cause for
the removal of their trustee, and to effect such removal by
their own united action. That this power must not be
exercised wantonly, capriciously, or arbitrarily, must of
course be conceded. That its exercise is subject to review
by a court of equity must also be conceded. But the law
which gives a man the right to dispose of his property by
will, and which seeks to give effect to every provision of the
will that does not contravene some fixed rule or principle
of jurisprudence, can find nothing contrary to public policy
in the grant of a power that enables beneficiaries to deal
summarily with their trustees without being compelled to
seek the aid of a court of equity for the purpose. Extra-
ordinary and unusual powers of this kind will, of course, be
strictly scrutinized, and their exercise closely supervised in
proper cases by the courts. But, as there is no law to pre-
vent or prohibit their creation, we must hold that, with
reference to them, a testator's will is entitled to be carried
into effect as much as in any other particular.

The power to remove their trustee was vested in the defendants to this cause. The power to determine when there was good and sufficient cause for such removal was necessarily in them also, subject to the restraining power of a court of equity against the abuse of it. They exercised their right to determine that good and sufficient cause existed; they found that there was such cause; and they removed the trustee accordingly. Upon the face of their proceeding, it is beyond question that they acted within the scope of their authority.

But was their action in fact an abuse of their power, instead of a legitimate exercise of it? Was there good and sufficient cause for the removal of the trustee? Or was the finding by the defendants of such cause a mere pretense for the exercise of arbitrary and unreasonable authority? As we have stated, we will not enter into any investigation of the causes of dissension between the parties, or of the reasonableness or unreasonableness of their respective positions. That there is dissension, bitter and uncompromising, is beyond question. That such dissension precludes intercourse between the parties, is their mutual declaration. If there can be no intercourse between them, no communication of views, their joint execution of their joint trust is an impossibility. The due execution of the trust requires concurrence of action, and consultation preliminary to action. The trusts are all active trusts, in which the judgment and discretion of both trustees are necessary for their proper execution: and we must suppose that it was to secure this concurrence of action, and to prevent the dissension that would militate against it, that the testator created the power of removal which he called into existence in his codicil. It is not necessary that there should be actual misconduct or moral delinquency on the part of a trustee to justify his removal: any failure, disability, or inability to perform the trust would be sufficient. Hill on Trustees; Story's Equity Jur., Sec. 1287, 1288; Perry on Trusts, Sec.

275. And it is also true that mere disagreements do not constitute sufficient cause for the removal of a trustee: for otherwise, the purposes of an appointment might sometimes be frustrated. 1 Perry on Trusts, 276; *Forster* v. *Davies*, De G. F. & J. 139. But unquestionably, the existence of dissension, deep seated and irreconcilable, not superinduced for the mere purpose of getting rid of a trustee who is in the faithful performance of his duty, but dissension such as imperils the due and proper execution of the trust, is sufficient to justify the removal of a trustee, even if otherwise the conduct of the trustee is unobjectionable. Story's Equity Jurisprudence, Vol. 2, Sec. 1288; *Letterstedt* v. *Broers*, 9 App. Cases, 371, 386; *Irvine* v. *Dunham*, 111 U. S. 327; *McPherson* v. *Cox*, 96 U. S. 404.

In the case last cited of *McPherson* v. *Cox*, in which the Supreme Court of the United States declined to sanction the removal of a trustee, where there was ill will between him and the beneficiary of the trust, that court said : " Where a trustee is charged with an active trust, which gives him some discretionary power over the rights of the *cestui que trust*, and which brings him into constant personal intercourse with the latter, it may be conceded that the mere existence of strong mutual ill feeling between the parties will, under some circumstances, justify a change by the court." And the court in that case refused to discharge the trustee on the ground that there was no active trust requiring personal intercourse between the parties, and because there was another trustee without whose concurrence and co-operation the objectionable trustee could effect nothing. But the circumstances here are those of an active trust, requiring for its due execution a constant intercourse and constant co-operation between the parties, with the existence of ill will between the appellant and his co-trustee, who is also the present principal beneficiary, as to make co-operation impossible. It is unnecessary to inquire into the causes of the dissension. It is plain that the case has arisen in which the Supreme

Court has said that a change of trustee by the court would be justifiable.

In another case that court has said: " Where there is a failure of suitable trustees to perform a trust, either from accident or from the refusal of the old trustee to act, or from any other cause, courts of equity will appoint new trustees." *Irvine* v. *Dunham*, 111 U. S. 327, 334.

It should not be forgotten that this is not a case of original application to a court of equity to remove a trustee, in which a just and sufficient cause for removal must be stated and proved, and in which a court of equity is not quick to seek cause for such removal, but rather an application to the court by the parties in interest to ratify a removal already made by themselves and which they had the express right to make under the testator's will. Ordinarily, the removal of a trustee is to that extent a contravention of the wishes of the creator of the trust, and is justified only because the trust itself is the main thing to be regarded, and the trustee to carry it into effect is of secondary consideration ; and the effort of the court is to do that which the person creating the trust must be assumed to have desired to do if he had anticipated the contingency that demanded a change of instrumentality. Here we have a removal made apparently in accordance with the express wishes of a testator, and the court is merely asked to sanction it, because the trustee resists the removal. It is difficult to imagine a case in which the wishes of beneficiaries would be better entitled to respect and recognition by the court than the present, without any reflection on the honor or integrity of the trustee.

It is objected, however, that it was not competent for the donees of the power in this instance to exercise it, after the institution of this suit, without the permission of the court previously had and obtained ; and the cases of *Webb* v. *Shaftesbury*, 7 Ves. 487, and *Jones* v. *Stockett*, 2 Bland, 409, 435, are cited in support of this position. It is probably sufficient answer to this objection to say that the sanction

of the court has, in fact, been given to the action of the parties, and that the action of the court in giving that sanction is not in itself a proper subject for review by us.

It is also objected that the action of the parties in the matter of the removal of the trustee was irregular, for the reason that Frederick May did not participate in it except by power of attorney given to his mother, and that the case was one of discretion in which there could be no delegation by power of attorney. This we deem it entirely unnecessary to determine, inasmuch as Frederick May subsequently ratified the removal, and the filing of the cross bill, and all that had been done in the premises; and there is no reason to suppose that the unanimous resolution required for the removal of the trustee might not be the result of correspondence, or might not have been reached in some other way than by the corporeal presence of all the parties meeting in conclave to deliberate upon the subject.

We find no reason to dissent from the action of the court below in directing the appellant to surrender the estate to the substituted trustee, and to settle his accounts, and in restraining him from further interference with the trust.

3. Error is assigned, also, upon the direction given by the court below for the settlement of the trustee's account, to the effect that the widow was entitled to be paid the one-third interest which she took under the will, without deduction of interest upon the mortgages upon the trust property. But this assignment of error is not greatly insisted upon by the appellant; and the direction given by the court is so plainly in accordance both with the letter and the spirit of the will that we deem it unnecessary to discuss the question at any length.

On the whole, we are of opinion that *the decree of the court below is right, and should be affirmed, with costs. And it is so ordered.*

On March 18, 1895, *Mr. Davidge* and *Mr. Gilmor*, on behalf of the appellant, filed a motion for an amendment of

the decree of this court, so as to allow to the appellant costs incurred in the cause, including reasonable counsel fees.

*Mr. Totten* and *Mr. Dennis* opposed the motion.

On March 20, 1895, the motion was overruled, Mr. Justice MORRIS delivering the opinion of the Court:

A motion has been filed in this cause on behalf of the appellant for an amendment of the decree of this court, so that he should be allowed his costs incurred in the cause, including such reasonable counsel fees as the Supreme Court of the District of Columbia might deem it just and proper to allow.

On behalf of the motion it is urged that the bill of complaint in the cause was filed for a construction of the will under which the appellant was executing his trust; that the trust was a most important one; and that the ground of the decision of this court, as well as of the decision of the court below, was upon matter that did not arise until after the filing of the bill, answer and replication, namely, the removal of the appellant from his trust by the appellees under the power confided to them by the will.

While it is true, as a general rule, that a trustee should be allowed his costs, even in many cases including counsel fees, incurred in proceedings instituted by him to aid him in the execution of his trust, the present does not seem to us to be such a case. The proceeding was apparently premature. No exigency had arisen for the institution of the suit. The good faith of the appellant in filing the bill has been seriously questioned. Even if we should assume that he was justified in filing the bill, the costs incurred in the matter of the bill, answer and replication are but a small part of the costs of the case. The bulk of those costs was incurred in the way of taking testimony upon the question upon which the parties actually went to issue. And to allow the appellant his costs now would be substantially to charge the appellees with the cost of doing what we have held they

were fully justified in doing, and which the appellant was not justified in resisting.

The costs which we have allowed in our decree are the costs of the appeal to this court. Having affirmed the decree of the Supreme Court of the District of Columbia, we have not sought to interfere with the allowance of costs by that court. Certainly it does not seem proper that we should do so at this time. Least of all does it seem proper that we should direct, as we are asked to do, that the Supreme Court of the District of Columbia should allow counsel fees in the case to the appellant.

We are compelled to *overrule the motion of the appellant.*