IRVINE v. ANGUS et al.

(Circuit Court, N. D. California. December 27, 1897.)

No. 4,858.

VOLUNTARY PAYMENT.

One paying assessments on stock which he held pending an appeal taken by him in an action in which he claimed the stock as his own, and in which the decree ordered that he turn the stock to its owner upon payment of an amount found to be due him, cannot recover such assessments from the owner, though the sum ordered by the decree was not paid until the termination of the appeal, as such holding of the stock raised an involuntary trust, and the payment of the assessments was to the use of the trustee, and not the owner.

This was an action by William Irvine against James S. Angus, Thomas G. Crothers, and W. S. Goodfellow, executors, substituted defendants for James G. Fair, deceased, to recover $15,090.06 paid by Irvine as trustee on assessments levied on stock which he held pending an appeal taken by him to the United States supreme court from a decree of the circuit court establishing a trust with respect to said stock, and ordering it turned over to one S. F. Dunham, whose real name was James G. Fair.

George W. Towle, for plaintiff.

Pierson & Mitchell and Wilson & Wilson, for defendants.

HAWLEY, District Judge. This action was brought by the plaintiff against James G. Fair, now deceased, to recover the amount of money paid by William Irvine in liquidation of assessments regularly levied upon 4,998½ shares of stock of the Morgan Mining Company, which shares, at the time of the assessments, stood of record on the books of that corporation in the name of Irvine, but were, in fact, the property of James G. Fair. The assessments, five in number, were paid between the 24th day of December, 1879, and May, 1884. The complaint in this action was filed April 13, 1886. It is alleged in the complaint that the shares of stock upon which the assessments were paid were held in trust by Irvine for Fair, and that in May, 1884, Irvine transferred the stock to Fair, surrendered his trust, and there-

after demanded from Fair the amount paid for assessments by him during the time of his trusteeship, to wit, $15,090.06. It is admitted that Fair died December 28, 1894, and that defendants, James S. Angus, Thomas G. Crothers, and W. S. Goodfellow, were duly and regularly appointed executors of his estate. The question as to whether Irvine was a trustee or the owner of the shares of stock in the Morgan Mining Company was made the subject of a suit in this court, in which one S. F. Dunham was the plaintiff, and William Irvine the defendant. The trial of that case resulted in a decree being entered in December, 1879, to the effect that Irvine held the shares of stock in trust for Dunham, and he was ordered to turn over the same to Dunham, upon receipt from him of the sum of $14,221.76, as a condition precedent to the transfer; that sum being found due to Irvine for expenditures made and assessments paid upon the shares of stock during the time he held same in trust. It is admitted, and the records show, that Dunham was simply another name for Fair, and that Fair was the real party in interest. Irvine, being dissatisfied with the decree in that case, took an appeal therefrom to the supreme court, and that court, on April 14, 1884, affirmed the decree of this court. 4 Sup. Ct. 501. The mandate from the supreme court was filed and entered in this court, April 30, 1884. On that day James G. Fair, as the assignee of Dunham, paid to the clerk of this court, who was appointed a commissioner, under the decree, to represent the defendant Irvine, the sum of $18,555.82,—being the amount of the principal sum of $14,221.76, with legal interest thereon from December 24, 1879,— and the said commissioner, by virtue of the powers vested in him (default having been made by Irvine), caused to be transferred and assigned the shares of stock, mentioned in the decree, standing on the books of the Morgan Mining Company in the name of Irvine, to James G. Fair. This action is brought to recover the money paid by Irvine upon the assessments on the shares of stock which were levied pending the appeal in that case. No question is made as to the regularity of the assessments, or of the amount of the assessments, paid by Irvine. There was no demand ever made by Dunham, or by Fair, as the assignee of Dunham, for any transfer of the shares of stock standing on the books of the Morgan Mining Company in the name of Irvine, until May 2, 1884, which was after the receipt of the mandate from the supreme court. The statement of facts in Irvine v. Dunham, 111 U. S. 327, 4 Sup. Ct. 501, is hereby referred to as showing more clearly the nature and character of the contentions of the parties in that suit. It will be observed that Irvine in that suit denied Dunham's right to the shares of stock, or any part thereof; denied that he held any stock in trust for Dunham; and claimed that he was the owner of all the shares of stock. In the complaint in the present action it is alleged that, during the times when the assessments were levied and paid by Irvine, the said shares of stock were held by Irvine as trustee for defendant Fair. The answer admits "that on the 24th day of December, 1879, and at all times thereafter, until the month of May, 1884, the plaintiff was the holder of 4,998½ shares of the capital stock of the Morgan Mining Company, and that the said shares of stock were at all said times the property of this

defendant.   But defendant denies that the plaintiff was at said times, or any of them, the lawful holder of said shares, or any of them, or held the same, or any of them, as trustee of this defendant, or held said shares, or any of them, for or as trustee for this defendant, save in this: that the said shares were at all times the property of this defendant, and that the said plaintiff was wrongfully in possession thereof, and held the same without the consent of this defendant, and was the trustee of this defendant in respect thereof, involuntarily and by operation of law, and not otherwise."    The answer further denies, with reference to the payment of the assessments by Irvine, "that the said several sums, or any of them, or any part thereof, paid by plaintiff, were each or all or any of them,   *   *   *   in whole or in part, paid to said corporation by plaintiff as trustee of said shares of stock, or for account thereof, or of this defendant," or that the same, or any part thereof, was paid by plaintiff at the instance or request of defendant, or to his sole or other use or benefit.    The defendant in his answer further alleges "that, at all the times in the complaint mentioned, the plaintiff was the holder of said shares, and claimed to own and hold the same in his own right, and not in trust for this de-fendant, and that each and all of said assessments upon the same, so paid by plaintiff, were so paid by him for his own use, and for the protection of his own interests, and not at the instance or request of the defendant, or for his use or benefit; that at all said times this defendant, as the plaintiff well knew, was the owner of said 4,998½ shares, and desired to have the possession thereof, and to have the same transferred to his own name upon the books of said corporation, and to pay all the assessments levied thereon; but that the plain-tiff wrongfully, and in disregard of the rights of the defendant, at all times held said shares of stock adversely to this defendant, and claimed the same to be, and treated the same as, his own individual property."

Section 2217 of the Civil Code of this state provides that "an in-voluntary trust is one which is created by operation of law."   See, also, sections 2223, 2224.    Section 2275 provides that "an involun-tary trustee who becomes such through his own fault, has none of the rights mentioned in this article."    At the trial the plaintiff moved for judgment on the pleadings, which motion is hereby denied.    The case will be considered upon its merits.

It is contended by the plaintiff that, inasmuch as the decree in Ir-vine v. Dunham established the fact that Irvine held the shares of stock as trustee, it became his duty, during the pendency of the ap-peal, to protect the property from sale; that the payments of the as-sessments were never made by Irvine until the last hour of the day of sale, and could not, therefore, be claimed to have been voluntary payments on his part; that Irvine was not required by the decree to transfer the shares of stock to Dunham, or his assignee, until the amount of money therein mentioned was paid over to him, which money was not paid until after the mandate of the supreme court, af-firming the decree in that case, was filed in this court, and hence it became his duty, as trustee, to pay the assessments on the stock.    In support of his contention, he relies upon the principles announced in

Keener, Quasi Cont. 388, 396. There is no doubt that in a certain line of cases a defendant could be held responsible for money advanced or paid out by another for his benefit, although he had not requested such payment to be made. Especially is this true where the payment, as made, cannot be regarded as having been officiously made. But is this such a case? The decision of the supreme court in Irvine v. Dunham, 111 U. S. 327, 334, 4 Sup. Ct. 501, must be accepted as establishing the nature and character of the decree which was entered by this court. The decree established the trust relations hitherto existing between the parties and settled the trust. What was the contention of Irvine in that case? To quote from that opinion:

"The appellant [Irvine] next contends that he is entitled, under the terms of the trust, to hold onto the stock, which he received as a consideration for the conveyance of the trust property, until there has been an accounting and the expenses and counsel fees have been paid. But by his answer he denies the trust, he claims to hold the stock for himself alone, he wants no accounting, and does not offer to account, or to hand over any net proceeds of the property after an accounting. In other words, he seeks to hold onto the trust property until it suits him to execute a trust, the existence of which he denies. * * * When, therefore, appellant denied that he held in trust the stock claimed by the appellee, the latter, having established the trust, was entitled to have, if he demanded it, a new trustee appointed, or, if the appointment of a new trustee were not necessary for the preservation of his rights, to have an account taken by the court of the expenses and assessments with which his share of the trust property was chargeable, and upon their payment to have a transfer to himself of his share of the stock. The decree of the circuit court has given him these rights. There has been an accounting, and the sum with which the appellee's interest in the stock is chargeable has been ascertained; and when the sum so found is paid by appellee, and not till then, the decree of the court requires a transfer to him of his share of the stock. The decree of the court simply executes and winds up a trust, the existence of which it finds, but which the trustee denies and refuses to execute. Both parties got their rights under the decree."

When Irvine took his appeal from that decree he took the chances of procuring a reversal. Whatever assessments he paid after that time he paid at his own peril, or, at least, to protect his own interest, not the interest of Fair, whose rights in the premises he continued to deny. His obligation to pay the assessments after he had taken the appeal did not arise from the nature of the relations theretofore existing between the parties. He was not charged by the decree with any other duty than to turn over the shares of stock, which the court declared he had held in trust for Dunham, upon the payment of the amount of money by Dunham or his assignee, as required by the decree. He could not thereafter create any additional charge or indebtedness against the property. He gained no additional rights by taking an appeal from the decree. His payment of the assessments thereafter levied must be treated as having been voluntarily made, and although the payments thereof resulted beneficially to Fair, whose duty it undoubtedly was to have paid the assessments, the plaintiff cannot, by such acts, hold Fair responsible for the money thus voluntarily advanced; this, upon the familiar principle that one person cannot make another his debtor by voluntarily paying his debts.

In Homestead Co. v. Valley R. R., 17 Wall. 163. 166, the court said:

"It seems that the appellants, during this litigation, paid the taxes on a portion of these lands, and claim to be reimbursed for this expenditure in case the title is adjudged to be in the defendants, on the ground that they paid the taxes in good faith and in ignorance of the law. But ignorance of the law is no ground for recovery, and the element of good faith will not sustain an action where the payment has been voluntary, without any request from the true owners of the land, and with a full knowledge of all the facts. It is an elementary proposition, which does not require support from adjudged cases, that one person cannot make another his debtor by paying the debt of the latter without his request or assent. It is true, in accordance with our decision, the taxes on these lands were the debt of the defendants, which they should have paid; but their refusal or neglect to do this did not authorize a contestant of their title to make them its debtor by stepping in and paying the taxes for them, without being requested so to do. Nor can a request be implied in the relation which the parties sustained to each other. There is nothing to take the case out of the well-established rule as to voluntary payments. If the appellants, owing to their too great confidence in their title, have risked too much, it is their misfortune; but they are not, on that account, entitled to have the taxes voluntarily paid by them refunded by the successful party in this suit."

In Litchfield v. County of Webster, 101 U. S. 773, 778, the court, in the course of its opinion, referring to the payment of taxes upon land, said:

"If one of the contesting claimants paid them, supposing the lands were his, he could not, if he finally failed to maintain his title, recover from the real owner what he thus advanced. We so held in Homestead Co. v. Valley R., 17 Wall. 153."

The defendants are entitled to judgment for their costs.