IRVINE v. ANGUS et al.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1899.)

No. 438.

1. MONEY PAID—VOLUNTEER—PAYMENT MADE BY CLAIMANT TO PROTECT PROPERTY DURING LITIGATION.

A decree adjudged that the defendant in the suit held certain mining stock as trustee for the complainant, and directed its transfer on payment by complainant of a sum found due the defendant for disbursements, and which was made a lien on the stock. The defendant appealed from the decree to the supreme court, claiming the stock as absolute owner. Pending the appeal, assessments were made on the stock, the payment of which was necessary to prevent the stock from being sold, and which the defendant paid. The decree below was affirmed, after which, for the first time, the complainant tendered payment of the sum thereby found due the defendant. *Held*, that the appeal taken by the defendant was only an exercise of a legal right, and could not be regarded as wrongful, although a repudiation of the trust; and as, in any event, he was entitled to protect his lien on the stock, his payment of the assessments was not officious nor the act of a volunteer, and that on the complainant's taking advantage of the decree after its affirmance, and obtaining from the court a transfer of the stock, he at once became liable as upon an implied promise to repay to the defendant the amount of such assessments, as having been made to his use and benefit.

2. LIMITATION OF ACTIONS—ACCRUAL OF CAUSE OF ACTION.

A cause of action to recover the money paid on such assessments did not arise until the complainant in the suit availed himself of the decree

1 Rehearing denied May 23, 1899.

by taking a transfer of the stock, and thus obtaining the benefit of such payments; and an action thereon would not be barred under the California statute until two years from that time.

3. EVIDENCE—ADMISSIONS BY RECORD.

When it appears from the bill of exceptions that the evidence upon the trial consisted of admissions of fact made by the parties in open court, the circuit court of appeals will treat such admissions as equivalent to a formal case agreed, and thereupon direct the circuit court to render a proper judgment upon such undisputed facts.

In Error to the Circuit Court of the United States for the Northern District of California.

George W. Towle, Jr., for plaintiff in error.

Pierson & Mitchell, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and DE HAVEN, District Judge.

DE HAVEN, District Judge. This was an action at law to recover from the defendants, as executors of the will of James G. Fair, deceased, the sum of $15,190.60, paid by plaintiff on account of assessments on certain shares of stock alleged to have been held by him, at the time of such payment, in trust for said Fair. The complaint further alleges that the money paid by plaintiff on account of said assessments was so paid at the special instance and request of Fair, and to his sole use and benefit. It appears that on March 28, 1874, the plaintiff executed an instrument in which he declared that he was the owner of an undivided half of certain mining property, known as the "Morgan Mine," and held said half interest equally for himself and one R. H. Sinton, and therein promised that, whenever said mine should be sold or otherwise disposed of, he would account to said Sinton, his heirs or assigns, for one-half of the proceeds of such sale or other disposition of the property, after the payment of all necessary expenses theretofore or thereafter to be incurred "in and about the property up to the time of such sale or other disposition thereof." The plaintiff, on April 9, 1875, conveyed the property mentioned to the Morgan Mining Company for 9,997 shares of the stock of that company, and by mean assignment one Dunham became the owner of the interest of Sinton in the property described in the trust instrument, and entitled to the shares of stock for which such interest had been exchanged. Thereafter, on June 29, 1875, Dunham applied to the plaintiff for an accounting, and offered to pay whatever expenses had been incurred by him in relation to such trust property, and demanded an assignment of the stock for which such trust property had been exchanged. The plaintiff refused to render an account, denied the trust, and claimed to own all of said shares of stock. Dunham thereupon commenced an action in the circuit court of the United States, Ninth circuit, for the Northern district of California, against Irvine, the plaintiff herein, in which he asked to have the trust declared and for an accounting, and on May 3, 1876, he assigned to James G. Fair all of his interest in the shares of stock and matters involved in said action of Dunham v. Irvine, and the action was thereafter prosecuted by Fair in the name of Dunham. Such proceedings were had therein that on December 24, 1879, a decree was entered in that action to the

effect that this plaintiff held 4,998½ of the shares of the stock of the Morgan Mining Company under the trust declared in the instrument hereinbefore referred to, subject, however, to the payment of the sum of $14,221.76, found by the decree to be due him on account of the payment by him of necessary expenses as contemplated by said declaration of trust; and it was further adjudged that upon the payment to this plaintiff by Dunham, or his assigns, of the sum of $14,221.76, within 60 days after the date of the decree, with interest, he should transfer to Dunham, or assigns, said stock. On the day when this decree was entered, the plaintiff herein took an appeal therefrom to the supreme court, and the decree was subsequently affirmed by the supreme court. 4 Sup. Ct. 501. It was admitted upon the trial that on April 30, 1884, James G. Fair tendered to the plaintiff herein the whole amount found to be due him by the said decree of the circuit court of the United States, with interest thereon, but no tender of any part thereof was made prior to the determination by the supreme court of plaintiff's appeal from that decree. This tender was refused by plaintiff, and Fair thereupon paid the amount so tendered to a commissioner appointed to receive the same by the final decree in the action of Dunham v. Irvine, and the shares of stock in controversy in that action were by the commissioner, acting under the power vested in him by such decree, transferred to Fair. It was also admitted that between the date of taking the appeal from the decree of the circuit court in Dunham v. Irvine, and its final determination by the supreme court, on April 4, 1884, the plaintiff herein paid $15,190.60 on account of assessments duly levied by the Morgan Mining Company upon the shares of stock in controversy in said action, and which, by the decree of the United States circuit court therein, he was adjudged to hold in trust for Dunham or his assigns; that, if these assessments had not been paid, the stock would have been sold; and "that each of said assessments was paid by Irvine from his own funds at the last moment that the same could be paid before the said shares would otherwise have been lawfully offered for sale and have been lawfully sold to satisfy such several assessments, and that such payments were each and all made by said Irvine to protect said shares from being sold." There was, however, no evidence given upon the trial tending to show that such assessments were paid by plaintiff upon the express request of Dunham or Fair. Upon the foregoing facts, which are not disputed, the circuit court found that, at the time of paying the assessments referred to, the plaintiff claimed to hold the shares in his own right, and not in trust for James G. Fair, and that each and all of the assessments upon the said shares of stock so paid by the plaintiff were paid by him for his own use and for the protection of his own interests, and not at the instance or request of James G. Fair, nor for his use or benefit; that the payment of said assessments was not necessary to be made by the plaintiff to protect or preserve the interest of James G. Fair in the shares of stock, or in or to any part thereof, nor was such payment made "by the plaintiff as trustee of said shares of stock, or for account thereof or of said James G. Fair"; that, at the time of paying such assessments, plaintiff did not hold the shares

of stock as trustee of James G. Fair, "but held the same wrongfully and without the consent of said James G. Fair, and was, as to the holding of the same, an involuntary trustee, and by operation of law solely." And it was further found that, during the whole time referred to in the complaint, "the said James G. Fair, as the plaintiff well knew, was the owner of said shares and desired to have the possession thereof, and to have the same transferred to his own name upon the books of said corporation, and to pay all the assessments levied thereon, but the plaintiff, wrongfully and in disregard of the rights of said James G. Fair, at all times held said shares of stock adversely to said James G. Fair, and claimed the same to be, and treated the same as, his own individual property." As a conclusion of law from these and other findings not necessary to be here stated, and for the reasons given in its opinion, reported in 84 Fed. 127, the circuit court held that the plaintiff was not entitled to recover, and judgment was thereupon entered in favor of the defendants. The case is brought here by the plaintiff in the action on a writ of error to reverse this judgment.

The errors assigned present the general question whether the findings of the circuit court above referred to are not opposed to the admitted facts as hereinbefore stated, the assignment of errors setting forth that upon such admitted facts the court ought to have found as facts that, at the time of paying the assessments thereon, the plaintiff in error held the shares of stock referred to in the complaint and findings as the trustee of Fair, upon the express trust established by the decree in Dunham v. Irvine; that the payment of such assessments was necessary in order to protect the interest of Fair in said shares; and that the amount paid by the plaintiff in error on account of such assessments was paid for the use and benefit of Fair. The conclusion of the circuit court that, in making the payments which are the foundation of this action, the plaintiff in error was not acting as the trustee of James G. Fair under the trust found to exist by the decree in Dunham v. Irvine, is clearly correct. He was, at the time when such payments were made, actively engaged in repudiating that trust, and was prosecuting an appeal to the supreme court for the purpose of securing a reversal of the decree by which it was established. The fact, however, that, in paying the assessments referred to, the plaintiff was not acting as the trustee for James G. Fair and solely for his benefit, is not sufficient to defeat this action, if there is any other independent ground upon which it can be maintained; and whether or not such other ground exists will now be considered. The complaint may be construed as containing a count for money paid by the plaintiff in error for the use and benefit of Fair. The right to maintain an action for money paid to the use of another is based upon equitable principles, and it was said by Chancellor Walworth, in Wright v. Butler, 6 Wend. 284:

"These actions on the money counts are resorted to as substitutes for bills in chancery, and ought to be encouraged whenever the law affords no other remedy, and where a court of equity would compel the defendant to repay to the plaintiff a sum of money which the latter had been compelled to pay for his benefit."

See, also, Hunt v. Amidon, 4 Hill, 345, 348.

To sustain such an action, the plaintiff is required to prove a payment of money, or the transfer of property of value, to the use of the defendant, and, where the payment or transfer was made without previous request, the proof must also show either a subsequent express or implied promise to repay, or that the payment was not officiously made by the plaintiff.

"Where no express order or request has been given, it will ordinarily be sufficient for the plaintiff to show that he has paid money for the defendant for a reasonable cause, and not officiously." 2 Greenl. Ev. § 114.

And in Keener, Quasi Cont. p. 388, the author says:

"No one officiously paying the debts of another can maintain an action either at law or in equity to recover from the debtor the money so paid. To hold otherwise would be to hold that a person has a right to thrust himself officiously upon another as his creditor. If, however, the payment made, though made without request, is not regarded in law as having been officiously made, the party so paying is entitled to be reimbursed by the debtor to the extent that the debt, as between the debtor and himself, should, in equity and good conscience, have been paid by the debtor."

This is only the statement of very familiar and well-settled principles of law. A mere volunteer is not entitled to be repaid money which he has expended for the benefit of another. Who is a "volunteer," within the meaning of this rule? A volunteer is one who has paid the debts of another without request, when he was not legally or morally bound so to do, and when he had no interest to protect in making such payment. One who pays the debts of another under such circumstances officiously intrudes himself into business which does not concern him, and his right to compel reimbursement is not recognized by law in the absence of a subsequent promise upon the part of the debtor to repay. But neither a previous request to pay nor a subsequent promise to reimburse need be proved to warrant a recovery in an action like this, when it is shown that the plaintiff was, for the protection of his own property, or the preservation of a lien held by him on property, compelled to pay what the defendant himself ought to have paid. The payment under such circumstances will not be deemed to have been officiously made, nor will the plaintiff be looked upon as a mere volunteer or intermeddler in matters in which he has no interest or concern. Let us now consider the application of this general rule of law to the admitted facts of this case. When plaintiff in error paid the assessments mentioned in the complaint, Fair was the real owner of the shares of stock upon which such assessments were levied, subject, however, to a lien thereon held by plaintiff in error, and which lien Fair, as the assignee of Dunham, was required to satisfy as a condition precedent to his right to receive from plaintiff in error a transfer of the legal title to such stock. These were the respective rights of plaintiff in error and Fair at that time, as such rights had been previously determined by the decree of the circuit court in the case of Dunham v. Irvine, and thereafter affirmed by the supreme court upon appeal. See Irvine v. Dunham, 111 U. S. 327, 335, 4 Sup. Ct. 501. There can be no doubt that, if the plaintiff in error had acquiesced in the decree of the circuit court in that case, and it had then become necessary for him to pay assessments upon such stock in order to preserve the lien thereon given to

him by that decree, such payment by him would not be regarded as officious, and he would, under the law, as already stated, be entitled to recover the amount so paid from the owner of the stock.

Was this right to protect his ascertained lien upon the stock, and to look to Fair for reimbursement in the event that Fair should finally be adjudged to be the owner of the stock, lost or affected by his appeal from that decree? We do not think the appeal can be given such effect. The plaintiff in error was not bound to accept the decree of the circuit court as final, and, in submitting the question involved in the action of Dunham v. Irvine to the final and decisive judgment of the supreme court, he only exercised a legal right, and such action of his cannot be regarded as wrongful, nor did he thereby become a wrongdoer. By taking the appeal he rendered himself liable, in the event of the affirmance of the decree, to answer such damages and costs as are provided by law for the failure to prosecute an appeal with effect, and he subjected himself to no other risk or liability. The lien given him by the decree was not destroyed by the act of taking such appeal, and his right to such lien was affirmed by the subsequent judgment of the supreme court. This being so, it would seem to follow that he had precisely the same right to make payments to protect the title of the property in controversy in that action, while the appeal was pending, as if such appeal had not been taken. He was not simply an adverse claimant to the stock without any right or title to protect at the time of paying the assessments referred to. The entire controversy between the parties at that time related only to the nature and extent of the interest of the plaintiff in error,—he claiming to be the absolute owner of the stock, while Fair was contending for the affirmance of the decree of the circuit court, which gave to plaintiff in error a lien upon the stock; and although the claim of the latter, that he was the owner of both the legal and equitable title, was not finally sustained by the court, still the law will not treat him as an officious volunteer in making payments necessary to protect the title to the property in litigation in that action, and in which he had a conceded interest to the extent of the lien finally established in his favor. There can be no presumption that the payment of the assessments, under the circumstances we have stated, was intended by the plaintiff as a mere gratuity to Fair, and as such payments were not officiously made, when Fair availed himself of the benefit arising therefrom by taking a transfer of the legal title to the stock, under the decree of the circuit court, he at once became liable, as upon an implied promise, to repay the plaintiff in error the amount thus paid, such payments being, in legal effect, to his use and benefit; and this should have been the finding of the circuit court upon the admissions contained in the bill of exceptions.

The case of Homestead Co. v. Valley R. Co., 17 Wall. 153, is clearly distinguishable from this. That case was an equitable action involving the title to certain lands, and, pending the litigation, the Homestead Company, complainant in the action, paid taxes on the property in dispute; and, in passing upon the question of the right of that company to be reimbursed on account of such payment, the court in that case said:

"It seems that the appellants, during this litigation, paid the taxes on a portion of these lands, and claim to be reimbursed for this expenditure in case the title is adjudged to be in the defendants, on the ground that they paid the taxes in good faith and in ignorance of the law. But ignorance of the law is no ground for recovery, and the element of good faith will not sustain an action where the payment has been voluntary, without any request from the true owner of the land, and with a full knowledge of all the facts. * * * It is true, in accordance with our decision, the taxes on these lands were the debt of the defendants, which they should have paid; but their refusal or neglect to do this did not authorize a contestant of their title to make them its debtor by stepping in and paying the taxes for them, without being requested so to do."

The language quoted shows that in that case the party seeking reimbursement on account of taxes paid was an adverse claimant, having no interest whatever in the land in litigation therein, and upon which such taxes were levied, and the decision of the court is based on this fact; while, in the case we are considering, the plaintiff in error did have a lien upon the stock upon which the assessments paid by him were levied, and it was necessary for the preservation of this lien that such assessments should be paid.

There is no finding upon the issue presented by that part of the answer of defendants in error in which the statute of limitations is pleaded as a defense to the action. This omission to find, however, is not material, as the action is not barred upon the admitted facts. Under subdivision 1 of section 339 of the Civil Code of Procedure of the State of California, "an action upon a contract, obligation, or liability, not founded upon an instrument of writing," must be brought within two years after the cause of action accrues. This is the provision of law applicable to the case under consideration. In our opinion, there was no implied promise upon the part of Fair to repay the plaintiff in error the amount paid by him on account of the assessments referred to, until May 21, 1884, on which day Fair availed himself of the benefits arising from such payments by taking a transfer of the legal title of the stock under the decree of the circuit court. The complaint in this action was filed April 13, 1886, and therefore within two years after the cause of action for money paid by plaintiff in error to the use and benefit of Fair accrued. All of the material facts having been agreed upon by the parties at the trial, as shown by the bill of exceptions, there is no necessity for a new trial of the action. In accordance with the views expressed in this opinion, the judgment will be reversed, and the cause is remanded to the circuit court, with directions to render judgment upon the admissions of the parties contained in the bill of exceptions, in favor of the plaintiff in error, for the sum of $15,190.60, with legal interest thereon from May 21, 1884, and costs.