*C. W. Worrill* and *John B. Guerry,* for plaintiff in error.

*E. R. King* and *H. A. Wilkinson,* contra.

---

## SAVANNAH LUMBER COMPANY *v.* BURCH.

1. In a case in which the State Industrial Commission has entered an award against an employer, allowing compensation for injuries sustained by an employee (and in which no further proceedings were had upon appeal), and thereafter the employer fails to comply with the terms of the award, such award may be enforced by suit and judgment in the superior court of the employer's residence.

2. Under the provisions of the workmen's compensation act of 1920 (Acts 1920, p. 167), and the amendments of 1922 and 1923 (Acts 1922, p. 185; Acts 1923, p. 92), the liability of the employer to pay compensation to an employee injured while in his service is primary; and if the insurance carrier becomes insolvent or for any reason the security fails to comply with his obligation, the liability for compensation which has been established by the industrial commission may be enforced by judgment against the employer.

---

Workmen's Compensation Acts, ..C. J. p. 130, n. 46 New.

3. There was no error in overruling all of the demurrers, both general and
   special.

No. 6017. FEBRUARY 20, 1928.

Certiorari; from Court of Appeals. 36 *Ga. App.* 621.

*Cobb & Bright,* for plaintiff in error.     *Robert L. Colding,* contra.

RUSSELL, C. J.   This was an action in the superior court, to
obtain a judgment against the Savannah Lumber Company upon
an award rendered by the Industrial Commission of Georgia
against the Savannah Lumber Company as an employer, and the
Integrity Mutual Casualty Company as insurance carrier or se-
curity.   It appears that on November 13, 1922, A. B. Burch, who
was an employee of the Savannah Lumber Company at a salary
of $29.25 per week, was injured while in the course of his em-
ployment, and an agreement was had between the employer and
the employee for the payment of compensation during his dis-
ability at the rate of $14.63 per week, this compensation to be paid
by the Integrity Mutual Casualty Company.   The agreement,
however, became immaterial in this case, because later, on Au-
gust 4, 1925, an application for a hearing before the industrial
commission, based upon a change in the condition of the em-
ployee, was made by the employer and the insurance carrier, and
the requested hearing was had in the City of Savannah on August
28, 1925, and the claim adjudicated by the industrial commission.
At the hearing evidence was introduced and the presiding com-
missioner, Hon. H. M. Stanley, made an award in due form in
favor of Burch for compensation for total permanent disability
for a period of 350 weeks from November 13, 1922, at the rate of
$14.63 per week.   This award was to be paid by the Savannah
Lumber Company, employer, as principal, and the Integrity Mu-
tual Casualty Company, insurance carrier.   On a petition for re-
view the matter came before the full commission on October 30,
1925, and the award previously made by Commissioner Stanley
was confirmed.   From this award no exception was taken.   On
May 22, 1926, Burch received a check drawn by the Integrity
Mutual Casualty Company on the Harris Trust & Savings Bank
of Chicago, Illinois, for $29.26, covering the 182d and 183d pay-
ments of the 350 weeks which had been allowed.   The payment
of this check was refused, with a notation:   "On account of re-
ceivership proceedings the Integrity Mutual Casualty Company

refuses to accept draft." On September 1, 1926, Burch died, as alleged, "as a result of the injuries he sustained." The plaintiff alleges that she was his wife, and that at the time of his death she was dependent solely upon him for support, and that she is entitled to receive from the Savannah Lumber Company the balance due upon said award; and she prays judgment for that amount. Demurrers, hereafter more specifically referred to, were overruled, and the cause was carried by writ of error to the Court of Appeals, where the judgment of the superior court was affirmed. Application for the writ of certiorari was granted by this court, in view of the gravity and importance of some of the questions affecting the rights of all employers, and especially employees in cases where, as in the present instance, the insurance carrier may become insolvent, a point which has not been ruled on by this court, and was specifically dealt with in the opinion of the Court of Appeals. No objection has been made in this case to the procedure adopted, nor has it been suggested by demurrer or otherwise that there may be others than the wife interested in the award rendered in behalf of her husband.

The first ground of demurrer, that the petition "fails to set forth any cause of action or any right to summary or remedial relief against defendant," was properly overruled, because, if for any reason the petitioner is not entitled to the relief she seeks, the demurrer is too general to call attention to the specific point, and a special demurrer was required to point out distinctly and particularly such defect. The second ground of demurrer, that the petition fails to show any right on the part of the plaintiff to bring suit for the homicide of her husband, is without merit, because the petition is very plainly based upon an award by the industrial commission of weekly compensation for a fixed period of time, for injuries received by the husband, and not an award for his homicide. In view of the fact last stated, there is no merit in the third ground of the demurrer, which complains that a named paragraph of the petition fails to disclose the capacity in which Burch was employed or the nature of the injury suffered by him. All inquiry into these matters was foreclosed by the award of the entire commission, from which no appeal was taken. Likewise, there is no merit in the fourth ground of demurrer, which complains specially because paragraph 2 of the petition fails to

disclose the nature of the alleged agreement between the employer and the employee; for the agreement became immaterial in view of the later hearing before the industrial commission and the final award before the commission as a whole.

The court did not err in overruling the fifth ground of demurrer. We have already called attention to the fact that no objection was made, by demurrer or otherwise, to the form of procedure adopted by the plaintiff. Therefore, whether the action be treated as if it were a suit upon an ordinary award, in which the judgment is asked to enforce the award of arbitrators in a statutory arbitration, or as a proceeding to obtain a judgment under the provisions of section 60 of the workmen's compensation act of 1920 (Ga. L. 1920, p. 200), the amount of the judgment must be fixed by the sum awarded by the industrial commission. In the section cited it is expressly provided "that any person at interest may file in the superior court . . a certified copy of . . an award of the commission, unappealed from; . . whereupon the court shall render judgment *in accordance therewith,* and notify the parties." There having been no appeal from the award of the commission, but on the contrary compliance with the award on the part of the surety until its insolvency, the plaintiff in error was precluded to assert that the award which it was sought to enforce by judgment was excessive. From the failure to appeal, a waiver of the right to object may be implied as against the employer.

In ground 6 of the demurrer paragraph 8 of the petition is specially demurred to as failing to show why collection from the insurance carrier has not been made or further attempted, and why the defendant is liable for default in payment by the insurance carrier. It is alleged in the petition that the insurance carrier is in the hands of a receiver and has failed and refused to make payment since May 22, 1926. Being in the hands of a receiver, it may be presumed to be insolvent. If so, the question is raised whether the defendant is relieved because it complied with the requirement of the statute by insuring Burch and others of its employees. As to this there can certainly be but one answer, and that in the negative. One of the purposes of the workmen's compensation act was to provide for the safety and protection of employees; and to this end the act provides methods of insuring the payment of such compensation as injured employees may be

entitled to for personal injuries sustained by them in the course of employment; and it was certainly not intended to exempt a solvent employer upon his taking out the policy of insurance with a company that might or might not be solvent. The employee has no part in procuring the policy of insurance. The selection of the company which is to act as insurance carrier is altogether with the employer; and if such employer selects a company of doubtful solvency, he must be held to do so at his peril. Section 11 of the act of 1920 provides: "That every employer who accepts the compensation provisions of this act shall insure the payment of compensation to his employees in the manner hereinafter provided, and while such insurance remains in force he or those conducting his business shall only be liable to any employee for personal injury or death by accident to the extent and in the manner herein specified." The words, "while such insurance remains in force," of themselves import and imply a negative pregnant that should the insurance cease to be in force, by reason of the insolvency of the insurance carrier and the consequent failure of insurance, the employer would be liable for the payment of compensation.

Furthermore, subsequent sections of the act, in our opinion, clearly show the intention of the General Assembly that the employer is primarily liable for the payment of compensation in accordance with the provisions of the act. Section 19 enacts "that nothing herein contained shall be construed so as to prevent settlements made by and between the *employee* and the *employer*, but rather to encourage them." Section 20 provides that "a principal, intermediate, or subcontractor shall be liable for compensation to any employee . . to the same extent as the immediate employer," and that "any claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer." Section 21 provides that "all rights of compensation granted . . shall have the same preference or priority . . against the assets of the employer as is allowed by law for any unpaid wages for labor." Section 23 provides for the giving of notice by an injured employee "to the employer" of the occurrence of any accident; and that unless the required notice is given, the employee shall not be entitled to compensation unless it can be shown that the employer had knowledge of the accident,

"but that no compensation shall be payable unless such written notice is given within thirty days after the occurrence of the accident, . . unless reasonable excuse is made to the satisfaction of the industrial commission . . and it is reasonably proved to the satisfaction of the commission that the employer has not been prejudiced thereby." Section 24 provides the contents of the notice to be given the employer. Section 26 requires the "employer" to furnish or cause to be furnished necessary medical attention to the injured employee, and provides that the total liability of the "employer" for such medical attention shall not exceed $100. Section 28 provides that the injured employee shall submit himself to physical examination, "if so requested by his employer," the expense thereof to be paid "by the employer or the industrial commission." Sections 30 and 31 provide and specify the compensation that "the employer shall pay, or cause to be paid," to the injured employee. Section 38 provides that in case of death resulting from injuries arising out of and in the course of employment, the compensation under the act shall be as follows: (a) "The employer shall . . pay the reasonable expenses of the employee's last sickness . . (b) The employer shall pay the dependents of the employee," etc. Other sections of the act are of similar import. See sections 41, 42, 43, 44, 46, 49, 55, and 56.

The provision as to insurance is found in section 66, which requires: "That every employee [employer] who accepts the provisions of this act relative to the payment of compensation shall fully insure and keep fully insured, unless otherwise ordered or permitted by the commission, *his liability thereunder* [italics ours] in some corporation, association, or organization licensed, as provided by law, to transact the business of workmen's compensation insurance in this State, or in some mutual insurance association formed by a group of employers so licensed, or shall furnish to the commission satisfactory proof of his financial ability to pay direct the compensation in the amount and manner and when due as provided for in this act." As to the form of policy and liability of the insurer, it is provided in section 71 that no policy or contract of insurance shall be issued unless it contains the agreement of the insurer that it will promptly pay to the person entitled to same all benefits conferred by the act; that the obligation shall not be affected by any default of the insured; and that "such agreement

shall be construed to be a direct promise by the insurer or insurers to the person entitled to compensation enforceable in his name." Section 72 provides that every such policy shall be deemed made subject to the provisions of the act, and requires that the form of such policy shall be approved by the industrial commission. We are of the opinion that the provisions of the act show that the primary obligation is upon the employer, and that the method of insurance or insurance carrier is merely a provision for security that the payment shall be made. The liability of the insurance carrier is merely cumulative and in addition to the primary liability of the employer. The requirement to provide insurance, referred to in section 11, is mandatory. The employer "shall insure," but this is only for additional protection to the employee, and does not result in relieving the employer from his primary obligation to pay as provided by the express terms of the act, in case the security which the law requires him to give should for any reason fail to perform his obligation.

A number of cases have been cited from other jurisdictions by counsel for plaintiff in certiorari; but an examination of these authorities shows that in each case the decision was controlled by a local statute, and none of them is applicable to the provisions of the Georgia workmen's compensation law. In the case of American Fuel Co. *v.* Industrial Commission, 55 Utah, 483 (187 Pac. 633), it was held that the employer was primarily liable, and that both the employer and the insurer were liable for payment of compensation to an injured employee, and that default of either did not excuse payment by the other; just as we are now holding in this case. The statute of Utah, in our opinion, is not as clear in the language employed to support the conclusion reached by the court as is our law on the subject. In Utah it is provided that "employers shall secure compensation to their employees by insuring and keeping insured the payment of such compensation with any stock company authorized to do business in the State, and the employer or the insurer shall pay compensation for injuries received, and the policy shall contain a provision to the effect that the insolvency or bankruptcy of the employer shall not relieve the insurer from the payment of compensation." The Georgia statute, instead of saying that either "the employer or the insurer shall pay," etc., says that the "*employer* shall pay," and

thereafter provision is made against possible insolvency of the employer by requiring him to provide security for the payment which the law has imposed on him, by a policy in a solvent casualty company.

The petition was not subject to the seventh and eighth grounds of special demurrer.

*Judgment affirmed.   All the Justices concur.*