## JOHNSON v. GILLETT et al.

No. 7960—Opinion Filed Nov. 6, 1917.

Corrected and Refiled Dec. 11, 1917.

Rehearing Denied.

(168 Pac. 1031.)

**1. Subrogation—Definition.**

The doctrine of subrogation is derived from the civil law, and it is said to be a legal fiction, by force of which an obligation extinguished by the payment made by a third person is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another.

**2. Same—Requisites.**

The doctrine requires (first) that a third person seeking its benefit must have paid a debt due to a third party before he can be substituted to that party's rights, and (second) that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgages, etc. The right is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another.

**3. Judgment—Conclusiveness—Estoppel—Ground of Judgment.**

When a fact has been once determined in the course of a judicial proceeding, and a final judgment has been rendered in accordance therewith, it cannot be again litigated between the same parties without virtually impeaching the correctness of the former decision, which, from motives of public policy, the law does not permit to be done. The estoppel is not confined to the judgment, but extends to all facts involved in it as necessary steps, or the groundwork upon which it must have been founded. It is allowable to reason back from a judgment to the basis on which it stands, upon the obvious principle that, where a conclusion is indisputable and could have been drawn only from certain premises, the premises are equally indisputable with the conclusion.

**4. Judgment—Res Judicata—Scope.**

Upon a plea of former adjudication, a matter will be held res adjudicata, although not raised as an issue by the pleadings in the former action, if from the record it appears that it formed one of the premises upon which the judgment necessarily rested.

(Syllabus by Galbraith, C.)

Error from District Court, Caddo County; Will Linn, Judge.

Action by J. W. Johnson against Myrtle Gillett and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

A. J. Morris, for plaintiff in error.

Louis E. McKnight, for defendants in error.

Opinion by GALBRAITH, C. This was an action by the assignee of a promissory note and a real estate mortgage for subrogation and general relief. The trial court denied the right, and entered judgment dismissing the action and for costs against the plaintiff, to review which this appeal has been perfected. The controlling facts are as follows:

September 1, 1908, Myrtle Gillett was the owner of lot 5, block 55, in the city of Anadarko. On that day she and her husband, Guy R. Gillett, executed two notes to Mary Maud Moran, one for $800, and one for $200, bearing 10 per cent. per annum interest from date and due one year thereafter, and gave a mortgage on the above-described lot to secure the same. On October 5th following they gave another note to T. F. Woodard in the sum of $300 of like tenor as the first notes, and executed a second mortgage on the same lot to secure the same. At the maturity of the Moran notes the Gilletts were unable to pay, and on September 3, 1909, the amount of the mortgaged debt matured and maturing against said lot 5 in block 55, aggregated the sum of $1,431.50. Guy R. Gillett then called upon W. M. Plum, who was agent at Anadarko for certan nonresident money lenders, making loans on real estate in Caddo county, and asked him if he could secure a loan on the above lot in an amount sufficient to take up the mortgaged indebtedness against it. Plum replied that he did not know, but would see what he could do. A short time afterwards one S. T. Powell, for whom Plum was acting as agent in making loans in Caddo county, came to Anadarko, and Plum suggested to him the desirability of making the loan to the Gilletts to enable them to take up the mortgages on their property, and Powell was induced to view the property and consented to make the loan. Plum, believing that he would do so, advised the Gilletts that the loan would be made, and he prepared a note for $1,600, and a mortgage on the property to secure the same, and the Gilletts signed the note and executed the mortgage. The Moran mortgage was at that time in the hands of attorneys for collection, and as soon as the Gilletts had executed the note for $1,600 and mortgage to Powell, Plum advised them that he would advance his own money and

take up the mortgaged debt against the property, and did so, discharging the mortgage debts and paying the Gilletts the difference between the amount thereof and $1,600, the amount of the Powell note, and caused the mortgages to Moran and Woodard to be canceled of record, relying upon Powell to reimburse him. He then made a draft on Powell attaching the Gillett mortgage and note therefor, and forwarded the same for collection. When this draft was presented to Powell for some reason he had changed his mind and declined to make the loan, and it was returned to Plum. Plum then erased Powell's name in the mortgage and wrote his own therein, and wrote his name in the note in which through inadvertence and oversight the name of the payee had been left blank, and placed the mortgage of record.

On the 6th day of January, 1912, for a valuable consideration, Plum sold and transferred to the plaintiff in error, Johnson, all of his right, title and interest in this transaction, and assigned the Gillett note and mortgage executed to Powell by the plaintiff. This note not having been paid at maturity, Johnson brought suit thereon praying for judgment, asking to have the mortgage reformed so as to make it read W. M. Plum, mortgagee, in place of S. T. Powell, and as reformed to have the same foreclosed and the mortgaged property sold to satisfy the debt, interest, attorney's fee, and cost. On the 3d day of September, 1913, judgment was rendered in that cause against the Gilletts, and in favor of the plaintiff in error, Johnson, for the amount of the mortgage debt, which Plum had paid for the Gilletts in the sum of $1,431.51, with interest from the date of payment, September 4, 1909, which indebtedness had been assigned to Johnson, but denying to Johnson a lien on lot 4, block 55, on account of the mortgage; the judgment, however, particularly reserved the question of the right of Johnson to subrogation in the following language:

"Provided that nothing in this judgment is intended to adjudicate any right of subrogation that plaintiff may have by reason of the payment of the $1,431.51, on the prior mortgages under any mortgages not set forth under pleadings in this cause."

On the day following the entry of this judgment the instant suit was filed seeking to establish the right of subrogation in the plaintiff for the mortgaged indebtedness paid by Plum for the Gilletts, and assigned by Plum to Johnson. Judgment was rendered in this case on the 15th day of July, 1915, and the court made findings of fact substantially set forth in the foregoing recital, with the further finding that the judgment of September 3, 1909, "had never been reversed, vacated, or set aside, and that no appeal had been taken therefrom, and that the same is now in full force and effect," and found as a conclusion of law that all the issues involved in this cause could and might have been determined in the prior action, if plaintiff was entitled to recover at all therein, and therefore rendered judgment for the defendants, dismissing the action at plaintiff's costs. To review this judgment, this appeal was prosecuted.

A motion is here presented by the defendants in error to dismiss the appeal for the reason that all necessary parties have not been made parties thereto. An examination of the record shows that all parties to the judgment appealed from have been made parties in this court, and therefore the motion to dismiss is overruled.

The controlling question in the case is whether or not Johnson, as assignee of Plum, under the facts set out was subrogated to the rights of the mortgagees, Moran and Woodard, whose mortgage lien on the lot in question was discharged by the money advanced by Plum. That question is foreclosed by the judgment of September 3, 1913. This judgment not having been appealed from became final, and by it Johnson, as assignee, was adjudicated the amount of the debt paid by Plum. That adjudication necessarily included a finding that Plum was not a volunteer, otherwise his assignee was not entitled to, and could not, recover the amount paid; the rule being well settled that one who voluntarily pays the debt of another, not being morally or legally bound to do so, is a mere volunteer, and cannot maintain an action to recover the same. Irvine v. Angus, 93 Fed. 629, 35 C. C. A. 501; Bennett v. Chandler, 199 Ill. 97, 64 N. E. 1052; Arnold v. Green, 116 N. Y. 566, 23 N. E. 1.

The rule is announced in Ruling Case Law, vol. 15, par. 451, as follows:

"While this doctrine of the effect of a judgment as an estoppel in subsequent actions is limited to matters involved in the litigation, it is generally held to be equally applicable whether the point decided is, of itself, the ultimate vital point, or only incidental, if still necessary to the decision of that point, and a judgment in a prior suit is deemed final and conclusive in subsequent litigation between the parties, or their privies, as to those matters necessarily determined or implied in reaching the final judgment, although no specific finding

may have been made in reference thereto, and even though it was not raised as an issue by the pleadings in the former action. If the record of the former trial shows that the verdict could not have been rendered without deciding the particular matter, it will be considered as having settled that matter as to all future actions between the parties, and if a judgment necessarily presupposes certain premises, they are as conclusive as the judgment itself, for the judgment is an adjudication on all the matters which are essential to support it. The judgment, so long as it stands, imports absolute verity as to every proposition of law and fact essential to its existence against all parties to it, and every proposition assumed or decided by the court leading up to the final conclusion and upon which such conclusion is based is as effectually passed upon as the ultimate question which is finally solved.

In Burlen v. Shannon, 99 Mass. 200, 96 Am. Dec. 733, the rule is announced as follows:

"The estoppel is not confined to the judgment, but extends to all facts involved in it as necessary steps for the groundwork upon which it must have been founded. It is allowable to reason back from a judgment to the basis on which it stands, 'upon the obvious principle that, where a conclusion is indisputable and could have been drawn only from certain premises, the premises are equally indisputable with the conclusion.'"

See, also, Brown v. Calvert, 57 Okla. 364, 157 Pac. 284; Parks v. Haynes, 52 Okla. 63, 152 Pac. 400; Baker v. Leavitt, 54 Okla. 70, 153 Pac. 1099; Freeman on Judgments, § 249.

The status of Plum and his assignee, Johnson, in this litigation having been settled by the prior judgment, namely, that of September 3, 1913, and it having been there adjudicated that Plum was not a volunteer, that question is settled, and is not open for consideration in the instant case, for the reason that it was there determined that Johnson, as assignee of Plum, had the right to recover the amount of money paid in satisfaction of the Gillett mortgage; it therefore follows that he was subrogated to the rights of the lienors, whose debts were discharged by such payment. The right of subrogation is not founded on a contract; it is a creation of equity; it is in force solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contract between the parties. Aetna Life Ins. Co. v. Town of Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537; Employers' B. & L. Ass'n v. Crafton et al., 63 Okla. 215, 164 Pac. 473.

We therefore conclude that the judgment appealed from should be reversed, and the cause remanded, with directions to sustain the claim for subrogation, and for such further proceedings, consistent with this opinion, as may be proper.

By the Court: It is so ordered.