## ATLAS WIRING CO. v. DORCHESTER et al.

No. 24936. Feb. 13, 1934.

Rehearing Denied May 22, 1934.

Pierce, Follens & Rucker, Ray S. Fellows, and Joseph A. Gill, Jr., for petitioners.

G. Ed Warren and Paul Brown, for respondents.

H. O. Bland, O. H. Searcy, Bert E. Johnson, C. L. Hamilton, and Edna Claire King, amici curiae.

SWINDALL, J. This is an original proceeding to review an award of the State Industrial Commission entered on July 14,

1933, against the petitioners, Atlas Wiring Company and W. P. Pitcock, in favor of the respondent, Sam Dorchester.

The facts as stated in the brief of the petitioner are admitted by the respondent to be substantially correct. In petitioners' brief they are stated as follows:

"On August 4, 1932, the petitioner W. P. Pitcock, an individual doing business as Atlas Wiring Company, employed the respondent, Sam Dorchester, to work as a lineman for said petitioner in the construction of a certain electric power line near Weleetka, Okla. On said date, the first day respondent had worked for your petitioner, respondent accidentally fell from a telephone pole upon which he was working, and sustained an injury to his left foot. It is admitted that, at said time, the respondent, Dorchester, was engaged in a hazardous occupation subject to the terms and provisions of the Workmen's Compensation Law of the state of Oklahoma.

"Subsequent to the date of respondent's said injury, respondent, Dorchester, in regular manner filed an application for compensation before the State Industrial Commission of the state of Oklahoma. On July 14, 1933, the State Industrial Commission rendered its award, under which it found that respondent, Dorchester, had sustained a 25 per cent. permanent partial disability to his left foot by reason of said injury, for which he was awarded 37½ weeks' compensation at the rate of $17.31 per week. Said award found that respondent, Dorchester, had been paid in full for the temporary total disability occasioned by said injury, said payment representing 22 weeks and five days' compensation at the rate of $17.31 per week, representing a total payment of $382.-82, and, further, that said Dorchester had been paid $17.31 on his permanent partial disability, leaving the sum of $631.80, to which said respondent was still entitled, and which these petitioners were ordered to pay.

"By stipulation it was admitted by the parties in this case, while it was pending before the Industrial Commission, and before said award had been made, in substance, that there was in full force and effect at the time of the injury of respondent herein, a certain policy of insurance issued by the Public Indemnity Company, a corporation, in the manner and form required by the Workmen's Compensation Laws of the state of Oklahoma. Under the terms of said policy, the Public Indemnity Company was required to make any payments of compensation required by law for injuries sustained in the course of employment by any employee of the petitioner W. P. Pitcock, when such employee was engaged in a hazardous occupation; and under such policy said Public Indemnity Company was required to pay respondent, Dorchester, any

award of compensation which might have been made by respondent State Industrial Commission to respondent Dorchester. Such policy of insurance had been secured by petitioner W. P. Pitcock prior to August 4, 1932, as required by the Workmen's Compensation Laws of this state.

"Said Public Indemnity Company, a corporation, paid compensation to the respondent, Sam Dorchester, from the date of said injury, less the five (5) day waiting period, to and including January 9, 1932, at the rate of $17.31 per week, or a total of $382.82, representing compensation for 22 weeks and five (5) days, and also paid to said respondent, Dorchester, the additional sum of $17.31 to apply on any permanent partial disability which said Dorchester might be adjudged to have. Subsequently, on January 16, 1933, said Public Indemnity Company, a corporation, ceased paying compensation to respondent, Dorchester, on account of its financial inability to make further payments to him, and on April 19, 1933, the said Public Indemnity Company was adjudicated an insolvent corporation by the Court of Chancery of the state of Delaware, in and for Newcastle county, and has since the payment of the total sum of $398.13, failed, refused, and neglected to pay any further compensation to respondent, Dorchester."

It is the contention of the petitioners that there is no liability upon the part of either of the petitioners to respondent, Sam Dorchester, for the payment of compensation because compensation insurance had been procured in accordance with the Workmen's Compensation Law of this state and was in full force and effect at the time of the injury for which the award complained of was made. By reason of having provided the payment of compensation to respondent, Sam Dorchester, as required by law, petitioners had done all that was required of them by law and should not and could not be compelled to both provide the payment of compensation and then to pay same.

It is the contention of the respondents that when the insurance carrier became insolvent, it was the duty of the employer to pay compensation to the injured employee in accordance with the award of the State Industrial Commission.

The question here for consideration does not appear to have been directly raised or passed upon by this court. However, it appears that the identical question was before the Supreme Court of Utah in the case of American Fuel Company of Utah, Plaintiff in Certiorari, v. Industrial Commission of Utah et al., 187 P. 633, 8 A. L. R. 1342, in which case the Utah court stated the facts as follows:

'Plaintiff, a corporation under the laws of Utah, procured the issuance by this court of a writ of certiorari directed to defendants. In its petition plaintiff, inter alia, alleges that on April 21, 1919, Theras Lappas filed an application with the Industrial Commission praying for compensation for personal injuries suffered by accident arising out of and in the course of the employment of said applicant by the American Fuel Company, the plaintiff; that on the 26th of September, 1919, a formal hearing was had before the Industrial Commission, when the plaintiff appeared and presented evidence showing that it had complied with the requirements of sec. 3114, Comp. Laws Utah 1917, and had secured compensation to its employees by insuring and keeping insured the payment of said compensation in the Guardian & Guaranty Company, a stock corporation authorized to transact the business of workmen's compensation insurance in this state, and that on said date petitioner held a binding policy of insurance in said Guardian Casualty & Guaranty Company, executed and delivered to it in conformity with the provisions of the Workmen's Compensation Act; that the policy covered the payment of compensation to all of its employees at its mines at Neslen, Utah, including the applicant, Theras Lappas; that said policy was in full force and effect at the time of said accident, to wit, July 25, 1917; that the Guardian Casualty & Guaranty Company recognized its liability to the applicant and for a considerable period of time made payments to him, as compensation and hospital expense, to an amount in excess of $550; that the Guardian Casualty & Guaranty Company does not deny its liability, but that said company is in the hands of a receiver; that on October 29, 1919, the Industrial Commission made and entered its award and order requiring petitioner to pay to the applicant the sum of $968.95 as compensation for said injuries; that on November 22, 1919, the petitioner made application for rehearing before the Industrial Commission on the ground that the Industrial Commission was without jurisdiction to order petitioner to pay the award, and that said Commission acted in excess of its powers in making and entering said award.

"Defendants have filed a demurrer to the petition on the ground that the facts therein stated are not sufficient to constitute a cause of action. It is the claim of petitioner that, by procuring insurance, it was relieved from all liability to pay compensation to its injured employee, and that the sole liability to pay the compensation ordered by the Commission devolved upon the Guardian Casualty & Guaranty Company, the insolvent insurance carrier."

After stating the facts the Supreme Court of Utah applied the law of that state in the following language:

"Comp. Laws Utah 1917, secs. 3113 and 3114, are as follows:

"'Sec. 3113. If a workman receives personal injury by accident arising out of and in the course of his employment, his employer or the insurance carrier shall pay compensation in the amounts and to the person or persons hereinafter specified.

"'Sec. 3114. Employers, but not including municipal bodies, shall secure compensation to their employees in one of the following ways:

"'I. By insuring and keeping insured the payment of such compensation with the state insurance fund; or

"'2. By insuring and keeping insured the payment of such compensation with any stock corporation or mutual association authorized to transact the business of workmen's compensation insurance in the state; or

"'3. By furnshing to the Commission satisfactory proof of financial ability to pay direct the compensation in the amount and manner and when due as provided for in this title.

"'In the latter case the Commission may in its discretion require the deposit of acceptable security, indemnity, or bond to secure the payment of compensation liabilities as they are incurred. All stock corporations or mutual associations transacting the business of workmen's compensation insurance in this state under the terms of subdivision 2 of this section shall be subject to the rules and regulations of the Commission with respect to rates to be charged, and methods of compensation to be used.'

"What is meant by the words 'employers shall secure compensation to their employees?' Does it mean they shall obtain an insurance policy and thereby be relieved of all responsibility to the employees, who have no voice in making the selection of the insurance carrier?' Or does it not plainly appear, both from the letter and the spirit of the law, that the employer 'shall secure'—make sure, make more certain—the payment of compensation, leaving the obligation still that of the employer? The primary obligation on the part of the employer is to pay compensation when awarded. Insurance is incidental, though important. It is necessary, because employers sometimes fail in business, and because payments to injured employees or their dependents are frequently distributed over long periods of time. To make more certain the prompt payment of these awards the insurance feature was provided by the law. In harmony with section 3114 is section 3116, which reads: 'Every policy of insurance covering the liability of the employer for compensation, whether is-

sued by the Commission or by a stock company, or by a mutual association authorized to transact workmen's compensation insurance in this state, shall cover the entire liability of the employer to his employees covered by the policy or contract, and also shall contain a provision setting forth the right of the employees to enforce in their own names, either by, at any time, filing a separate claim, or by, at any time making the insurance carrier a party to the original claim, the liability of the insurance carrier in whole or in part for the payment of such compensation; provided, however, that payment in whole or in part of such compensation, by either of the employer or the insurance carrier shall, to the extent thereof, be a bar to the recovery against the other of the amount so paid.'

"Why provide that the employee file a separate claim against the insurance carrier if the employer is not liable, and why make the insurance carrier a party to the original claim? Why provide that payment, 'in whole or in part, by either 'the employer or the insurance carrier, shall, to the extent thereof, be a bar to the recovery against the other of the amount so paid, unless both are liable?

"Section 3117 provides: 'Every such policy and contract shall contain a provision that, as between the employee and the insurance carrier, the notice to or knowledge of the occurrence of the injury on the part of the employer shall be deemed notice or knowledge, as the case may be, on the part of the insurance carrier; that jurisdiction of the employer shall, for the purpose of this title, be jurisdiction of the insurance carrier, and that the insurance carrier shall in all things be bound by and subject to the orders, findings, decisions, and awards rendered against the employer for the payment of compensation under the provisions of this title.'

"If the employer is relieved from liability when he procures his insurance, why should an award be rendered against him? The employer is the one against whom jurisdiction must be obtained, and the insurance company is bound by the orders and awards against the employer, whose primary liability seems to be recognized by the section just quoted.

"Section 3118 reads: 'Every such policy and contract shall contain a provision to the effect that the insolvency or bankruptcy of the employer, and his discharge therein, shall not relieve the insurance carrier from the payment of compensation for injuries or death sustained by an employee during the life of such policy or contract.'

"Discussing the above section, the Attorney General aptly says in his brief: 'In considering this section the, thought immediately occurs, why, if the employer is not liable, provide that insolvency or bankruptcy shall not relieve the insurance carrier? If he was never liable, under the plaintiff's theory, why should his insolvency or solvency, bankruptcy or prosperity, make any difference in its effect upon the insurance carrier? This section was inserted to save the situation from the principle that an insolvency or bankruptcy, or a discharge therefrom, of the employer, should relieve the insurance carrier. But why should it be necessary to save the situation from such a legal principle if the carrier were, from the beginning, the only and original one liable? Why speak of him not being released on the contingency of the employer being unable to pay because of insolvency or bankruptcy, if the employer was never liable, regardless of him being solvent or insolvent, bankrupt or flourishing?'

"Section 3119 is as follows: 'Each county, city, town, or school district which is liable to its employees for compensation may insure in the state insurance fund or pay compensation direct.'

"If a county, city, town, or school district procures insurance, it certainly is not absolved from its primary liability to pay compensation, and yet there is no difference as between private and public employers; both are liable for compensation; but the public employer is exempt from the obligation to secure such payment. Otherwise their obligations are the same.

"Section 3126 is as follows: 'If a workman who has been hired in this state receives personal injury by accident arising out of and in the course of such employment, he shall be entitled to compensation according to the law of this state as provided for in this title, even though such injury was received outside of this state. If a workman who has been hired outside of this state is injured while engaged in his employer's business, and is entitled to compensation for such injury under the law of the state where he was hired, he shall be entitled to enforce against his employer his rights in this state if his rights are such that they can reasonably be determined and dealt with by the Commission and the court in this state.'

"The provision that the employee shall be entitled to enforce his rights against his employer is another recognition of the principle that the employer is primarily liable for compensation. This thought is emphasized in section 3132, which reads, in part: 'The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee shall be the exclusive remedy against the employer. * * *'

"Section 3134 reads: 'Every employee, or his legal representative in case death results, who makes application for an award, or accepts compensation from an employer, waives his right to exercise his option to institute proceedings in any court. Every

employee, or his leegal representative in case death results, who exercises his option to institute proceedings in court, as provided in this title, waives his right to any award or direct payment of compensation from his employer.'

"It will be noticed that this section uses the words 'compensation from an employer' and 'direct payment of compensation from his employer,'—not from the insurance carrier.

"Section 3127 provides that the employers who comply with the provisions of section 3114 shall not be liable to respond in damages for injuries sustained by their employees not resulting in death. If complying with section 3114 and obtaining insurance relieves the employer from all liability, as contended by plaintiff, why say he 'is not liable to respond in damages,' leaving the unavoidable inference that he is still liable for compensation?

"Reading the statute as a whole, and considering all of its provisions, the plain and unmistakable import of the language of the act compels the conclusion that the right to compensation arises out of the relation existing between employer and employee; that compensation is a tax upon industry or upon the employer's business, a tax that is added to the price of the product and is ultimately paid by the consumer; that the employer is primarily liable for compensation to the employee; that both employer and insurance carrier are liable for the payment of compensation to the injured employee; and that the default of either will not excuse payment by the other.

"The demurrer to the petition is therefore sustained; plaintiff's petition is dismissed, and the Commission's award is affirmed. Plaintiff to pay costs."

We will now consider certain provisions of our Workmen's Compensation Law.

Section 13351, O. S. 1931, provides in part that:

"Every employer subject to the provisions of this act shall pay, or provide as required by this act, compensation according to the schedules of this article for the disability of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment. * * *"

Paragraph 2 of the same section provides that:

"The person entitled to such compensation shall have the right to recover the same directly from his immediate employer, the independent contractor or intermediate contractor, and such claims may be presented against all of such persons in one proceeding.

* * * If it appears in such proceeding that the principal employer is liable for compensation under the terms of this act, and the subcontractors of the independent contractor and their sureties, are also liable, then judgment or order shall be issued against all of such parties and execution may be issued therefor, but such execution shall first be enforced against those found liable other than the principal employer, and will be enforced as against the principal employer only for the residue of such claim after exhausting the execution against others liable therefor. * * *'"

Section 13374 is as follows:

"An employer shall secure compensation to his employees in one of the following ways:

"(a) By insuring and keeping insured the payment of such compensation with any stock corporation or mutual association or by exchanging contracts of indemnity or inter-insurance, under reasonable regulations prescribed by the Commission providing for and securing the payment of the compensation provided in this act, or other concerns authorized to transact the business of workmen's compensation insurance in this state. If insurance be so effected in such corporation or mutual association or reciprocal or inter-insurance association, the employer shall forthwith file with the Commission, in form prescribed by it, a notice specifying the name of such insurance corporation or mutual association or reciprocal or inter-insurance association together with a copy of the contract or policy of insurance.

"(b) By obtaining and keeping in force guaranty insurance with any company authorized to do such guaranty business in this state; provided, that any person, firm, association or corporation engaged in the business of writing insurance as required of an employer by this act who refuses to limit the policy to be written when requested by the assured, to employees engaged in hazardous employment, shall be guilty of a violation of the insurance laws of this state, and the State Insurance Board shall punish such violation as provided in section 20, chapter 174, Session Laws of Oklahoma, 1915 (10552), or

"(c) Subject to the approval of the Commission, any employer may enter into or continue an agreement with his or their workmen to provide a scheme of compensation, benefits or insurance in lieu of the compensation and insurance provided by this act; but such scheme shall in no instance provide less than the benefits here secured nor vary the period of compensation provided for disabilities or the provisions of this act with respect to periodic payments or the percentage that such payments shall bear to weekly wages, except that the sums required may be

increased; provided, further, that the approval of the State Industrial Commission shall be granted, if the scheme provides for contributions by workmen, only when it confers benefits in addition to those required by this act commensurate with such contributions.

"(d) By furnishing satisfactory proof to the Commission of his financial ability to pay such compensation for himself, in which case the Commission may, in its discretion, require the deposit with the Commission of securities or indemnity bond in an amount and of a kind to be determined by the Commission to secure his liability to pay the compensation provided for in this act.

"If any employer fails to comply with this section he shall be liable to a penalty for every day which such failure continues of one dollar for every employee to be recovered in action brought by the Commission.

"The Commission may, in its discretion, for good cause shown, remit any such penalty; provided, the employer in default secure compensation as provided in this section."

Section 13377 provides:

"(a) Every policy of insurance covering the liability of the employer for compensation issued by a stock company or by a mutual association or other concern authorized to transact workmen's compensation insurance in this state shall contain a provision setting forth the right of the Commission to enforce in the name of the people of the state of Oklahoma, for the benefits of the person entitled to the compensation insured by the policy either by filing a separate application or by making the insurance carrier a party to the original application, the liability of the insurance carrier in whole or in part for the payment of such compensation; provided, however, that payment in whole or in part of said compensation by either the employer or the insurance carrier shall, to the extent thereof, be a bar to the recovery against the other of the amount so paid.

"(b) Every such policy shall contain a provision that as between the employee and the insurance carrier, the notice to or knowledge of the occurrence of the injury on the part of the employer shall be deemed notice or knowledge, as the case may be on the part of the insurance carrier, that jurisdiction of the employer shall, for the purpose of this act, be jurisdiction of the insurance carrier, and that the insurance carrier shall in all things be bound by and subject to the orders, findings, decisions or awards rendered against the employer for the payment or compensation under the provisions of this act.

"(c) Every such policy shall contain a provision to the effect that the insolvency or bankruptcy of the employer shall not relieve the insurance carrier from the payment of compensation for injuries sustained by an employee during the life of such policy."

Section 13375 requires as follows:

"Every employer who has complied with section 1 of article 3 (13374) of this act, shall post and maintain in a conspicuous place or places in and about his place or places of business typewritten or printed notices in form prescribed by the Commission, stating the fact that he has complied with all the rules and regulations of the Commission and that he has secured the payment of compensation to his employees and their dependents in accordance with the provisions of this act."

Section 13366 provides that:

"If payment of compensation or an installment thereof due under the terms of an award, except in case of appeals from an award, be not made within ten days after the same is due by the employer or insurance carrier liable therefor, the Commission may order a certified copy of the award to be filed in the office of the court clerk of any county, which award, whether accumulative or lump sum, shall be entered on the judgment docket of the district court and shall have the same force and be subject to the same law as judgments of the district court. Upon the filing of such certified copy of the Commission's award, a writ of execution shall issue and such process shall be executed and the cost thereof taxed, as in the case of writs of execution, and judgments of courts of record, as provided by the Code of Civil Procedure. * * *"

Section 13360 provides in part that:

"Any time after the expiration of the first five days of disability on the part of the injured employee, a claim for compensation may be presented to the Commission. If the employer and the injured employee shall reach an agreement as to the facts with relation to an injury, for which compensation is claimed under this act, a memorandum of such agreement, in form as prescribed by the Commission, and signed by both the employer and employee, may be immediately filed by the employer with the Commission, and if approved by the Commission, shall, in the absence of fraud, be deemed binding upon the parties thereto, such agreement shall be approved by the Commission only when the terms conform to the provisions of this act. * * *"

Section 13354 provides in part that:

"The employer shall promptly provide for an injured employee such medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus as may be necessary during 60 days

after the injury or for such time in excess thereof as in the judgment of the Commission may be required. * * *"

In the case of Huck v. Gaylord, 50 Tex. 578, 582, the court approves the definition of "secure" defined by Webster, in the following language: "Webster defines 'secure' to mean 'To make certain; to put beyond hazard.' "

The Supreme Court of Georgia, in Savannah Lumber Co. v. Burch, 142 S. E. 83, in construing the Workmen's Compensation Law of that state, which is similar to our law, after quoting certain provisions of certain sections of the Georgia act, says:

"We are of the opinion that the provisions of the act show that the primary obligation is upon the employer, and that the method of insurance or insurance carrier is merely a provision for security that the payment shall be made. The liability of the insurance carrier is merely cumulative and in addition to the primary liability of the employer. The requirement to provide insurance, referred to in section 11, is mandatory. The employer 'shall insure,' but this is only for additional protection to the employee, and does not result in relieving the employer from his primary obligation to pay as provided by the express terms of the act, in case the security which the law requires him to give should for any reason fail to perform his obligation."

In the case of Merrick & Coe v. Modlin, 88 Okla. 83, 211 P. 510, this court, speaking through Mr. Justice Kennamer, said:

"The test as to whether the injured employee is entitled to the benefits of the Workmen's Compensation Law is whether he was engaged in hazardous employment at the time he received an accidental injury. The primary obligation of paying such injured employee compensation rests upon the employer, and the statute makes it the duty of an employer employing laborers to perform hazardous labor to insure the payment of the compensation in case of accidental injury by complying with the provisions of the law in securing such compensation to the employee by carrying insurance, where the employer is engaged in some line of business coming within the provisions of the act."

Immediately following this paragraph in the opinion the court quotes with approval American Fuel Company of Utah v. Industrial Commission of Utah et al., supra.

In Hawkins v. Bryan, 128 Okla. 27, 261 P. 167, Bryan was an employee of the Blue Ribbon Mining & Milling Company, a corporation engaged in mining and milling lead and zinc, and while thus employed he received injuries for which he was by the State Industrial Commission awarded a balance on compensation, and the employer and its insurance carrier were directed to file with the Industrial Commission within 30 days from the date of the award receipts showing payment in compliance with the order. The award was not paid and the judgment of award was filed in the district court of Ottawa county, and Bryan brought suit in said court for judgment on the award and this court held that such proceeding was proper under the law in force at that time.

In Steffens Ice Cream Co. v. Jarvis et al., 132 Okla. 300, 270 P. 1103, an employee sustained an accidental injury in the course of employment, and the employer reported the accident to the State Industrial Commission, and the insurance carrier reported to the State Industrial Commission that it had complied with the law in paying compensation to the injured employee, and the attending physician reported to the State Industrial Commission that medical attendance and hospitalization were being given the injured employee, and the insurance carrier paid the compensation allowed by law for a period of 20 months, and then became bankrupt and payment was stopped, and the State Industrial Commission then cited employer to show cause why said payment should not be made. We held that the State Industrial Commission had jurisdiction to award compensation against the employer, and that under the circumstances the claim was not barred by the statute of limitations.

Many other cases by our court holding the employer liable where the insurance carrier becomes insolvent might be cited, but after a careful consideration of our Workmen's Compensation Law, and construing the several sections together, it appears to us that it was clearly the intent of the Legislature to make the employer primarily liable, and that securing insurance for the payment of awards under the Workmen's Compensation Law does not relieve the employer from liability in case the insurer becomes insolvent.

The award of the State Industrial Commission is affirmed.

ANDREWS, McNEILL, OSBORN, and BAYLESS, JJ., concur. RILEY, C. J., and CULLISON, V. C. J., dissent. BUSBY and WELCH, JJ., absent.