UPDIKE ADVERTISING SYSTEM, Inc., and The Hardware Mutual Casualty Company, a corporation, Petitioners,

v.

STATE INDUSTRIAL COMMISSION, and Susan Updike, for herself and as mother and next friend of James Updike and Jeffrey Updike, minors, Respondents.

No. 35637.

Supreme Court of Oklahoma.

Feb. 1, 1955.

Rehearing Denied March 29, 1955.

Application for Leave to File Second Petition for Rehearing Denied May 3, 1955.

See also 282 P.2d 230.

Original action to review an award of the Industrial Commission made to the dependent heirs of James M. Updike, deceased, under the death benefit provisions of the Workmen's Compensation Act. Award sustained.

Houston, Klein, Melone, & Davidson, Henry Kolbus, Tulsa, for petitioners.

Young, Young & Young, Sapulpa, Mac Q. Williamson, Atty. Gen., for respondents.

Paul W. Updegraff, Norman, George Bingaman, Purcell, Paul Pugh, C. W. Schwoerke, Oklahoma City, amici curiae.

ARNOLD, Justice.

This is an original proceeding brought by Updike Advertising System, Inc., and its insurance carrier to review an award made under the death benefit provisions of the Workmen's Compensation Law, 85 O. S. 1951 § 1 et seq., to the dependent heirs, consisting of the widow and minor children, of the deceased employee of said advertising company, James M. Updike.

The evidence is not in conflict and is as follows:

Updike Advertising System, Inc., was a family corporation, all of its stock being owned by the deceased, his mother and two brothers. James M. Updike, deceased, was the president and manager of said company and assisted in the making, repairing, and inspecting of the outdoor billboards manufactured by said company; on June 15, 1951, deceased, his wife and child, and his mother started an automobile trip in a company-owned car for the purpose of inspecting and repairing billboard signs of the company in both Oklahoma and Iowa; proper tools, paint, and equipment were carried in the car for the purpose of making such repairs; near Sapulpa another automobile struck the automobile which deceased was driving, killing him instantly; James M. Updike was listed on the contract of insurance issued by the insurance carrier herein to the corporation providing for coverage on liabilities incurred by said corporation under the Workmen's Compensation Law and his employment and compensation therefor was used and considered in determining the amount of premiums charged by said insurance carrier and paid by said respondent corporation.

Claimant herein, the dependent widow of James M. Updike, deceased, filed an action for wrongful death in the District Court of Creek County on behalf of herself and minor children against the driver of the other automobile; that action was settled by an agreed judgment for $10,000 and costs and that judgment had been fully satisfied prior to the hearing before the Industrial Commission on claimant's death benefit claim, though the record does not show how the amount of the judgment was disbursed or the amount of attorney fees paid for prosecution of the claim for wrongful death.

The trial Commissioner on February 26, 1952, entered an order finding that at the time of his death deceased was engaged in a hazardous employment subject to and covered by the Workmen's Compensation Law; that his death arose out of and in the course of such employment; that

claimant and the two minor children were the sole and only dependent heirs of said deceased, and entered an award in their favor in the amount of $13,500. On appeal to the Commission en banc the award was affirmed. The employer, Updike Advertising System, Inc., and its insurance carrier, The Hardware Mutual Casualty Company, bring this proceeding for a review of that award.

[1–5] Petitioners contend that the deceased was not engaged in an employment covered by the Workmen's Compensation Law at the time of his death because his work was merely executive in nature. An officer in a corporation may serve both as an officer and workman under circumstances making him an employee within the meaning of the Workmen's Compensation Law and, if he sustains injuries while performing duties in the latter capacity, he is entitled to compensation under said act. Southern Surety Co. v. Childers, 87 Okl. 261, 209 P. 927, 25 A.L.R. 373. The business of an outdoor advertising company in making, altering, or repairing outdoor billboards constitutes the "alteration or repair of structures" within the meaning of the provision of the Compensation Act defining the alteration of "structures" as hazardous. Switzer Advertising Co. v. White, 188 Okl. 567, 111 P.2d 815. An employee who is employed in a hazardous employment and has duties partly clerical and partly manual and mechanical is covered, though his duties for the most part be clerical. Mason Lumber Co. v. Andruss, 188 Okl. 365, 110 P.2d 605; it is the nature of the employment in which the employee is engaged, rather than the specific act which he may be performing at the time of an injury, which determines his right or lack of right to compensation under the Workmen's Compensation Act. Pawnee Ice Cream Co. v. Price, 164 Okl. 120, 23 P.2d 168; Sheffield Steel Corporation v. Barton, 183 Okl. 624, 84 P.2d 17. The evidence shows that the deceased's work was partly executive and partly manual and mechanical; that he assisted when needed in the repair and manufacture of billboards; that he often made inspection trips, such as the one he was engaged in at the time of his death, to check on the condition of the billboards of the company and made any such repairs as were needed; that he was carrying proper tools, paint, and other equipment for this purpose in the company car at the time of his death; that the primary reason for the trip was to check on the condition of and make repairs to the company's billboards. Under the rules above announced the Commission's finding that at the time of his death deceased was engaged in a hazardous occupation covered by the Workmen's Compensation Act and that his death resulted from an accidental injury arising out of and in the course of his employment is sustained by competent evidence, and such finding, being one of fact and amply sustained by the evidence, will not be disturbed by us. Oklahoma Gas & Electric Co. v. Santino, 158 Okl. 70, 12 P.2d 221.

Petitioners next contend that where a claimant for death benefits has made a recovery against a third party for the wrongful death of the decedent the employer and insurance carrier are entitled to credit for such recovery on the death benefit award; they contend that 85 O.S. 1951 § 44(b), which specifically provides:

> "There shall be no subrogation to recover money paid by the employer or his insurance carrier for death claims or death benefits under this Act from third (3d) persons * * *"

is unconstitutional in that it deprives them of their property without due process of law and is violative of Article II, Section 7 (due process) and Article II, Section 23 (private property shall not be taken without compensation) of the Oklahoma Constitution and Section 1 of the 14th Amendment to the Constitution of the United States (the due process clause).

Some basic, pertinent and controlling facts should be kept in mind.

All employers in businesses falling within the purview or categories of the Workmen's Compensation Law must carry insurance to pay liabilities thereunder or get permission to carry their own risk. Liability under the act requires only a showing that an accidental event occurred

causing a certain loss or decreased earning capacity by reason of such loss to a specific member of the body catalogued in the act. All common-law defenses are taken away from the employer and his insurance carrier and no negligence need be shown. In other words, the employer must insure against loss, and the insurance company who contracts to pay is in the same position as an insurance company insuring the life of an individual or insuring against accidental injury to an individual. There would be no subrogation without statutory provision. Such subrogation was provided by the Legislature in the original Workmen's Compensation Act as to the only liability provided therein and that was for loss of earning capacity by reason of injury to specific members of the body or permanent total disability. Without this provision no employer and no insurance carrier would have had subrogation. 58 Am.Jur. Sec. 358, page 818; Larson's Workmen's Compensation Law, Vol. 2, Sec. 74.11; State ex rel. Industrial Commission v. Pressley, 74 Ariz. 412, 250 P.2d 992; 46 C.J.S., Insurance, § 1209; 29 Am. Jur. 1340; Crab Orchard Improvement Co. v. Chesapeake & Ohio Railroad Co., 4 Cir., 115 F.2d 277, certiorari denied 312 U.S. 702, 61 S.Ct. 807, 85 L.Ed. 1135; Maryland Casualty Co. v. Paton, 9 Cir., 194 F.2d 765.

At the time that the Workmen's Compensation Law was written and until July 4, 1950 (the date of the adoption of the constitutional amendment) the right of recovery for death could not be limited by the Legislature, Article 23, Section 7. The Constitution, as indicated above, was amended so that a death benefit in a specified amount and under the same circumstances and conditions provided in the Workmen's Compensation Law for recovery for specific injury or disability could be fixed by the Legislature. So the Legislature by House Bill No. 312, Session Laws 1951, 85 O.S.1951 §§ 3.1, 11, 12, 22, 24, 43, 44, 48, 84, 109, 122, provided a death benefit under the Workmen's Compensation Law of $13,500 on the same showing that specific liability arose under the original act, that is, a showing merely that an acci-

dent occurred in an employment covered by the act which produced death and that there were dependent heirs. As in the original act, no negligence need be shown and all common-law defenses are taken away and the act further provides that his remedy or very different cause of action shall be exclusive as far as the employer is concerned. Theretofore the employer could be sued by the same persons (that is, dependent heirs) for wrongful death of an employee under our statute but, of course, negligence would have to be shown. Now a negligent employer cannot be sued nor recovery had against him except for the amount provided by the Workmen's Compensation Law as amended and the act specifically, and without ambiguity, provides that there shall be no subrogation. (Subrogation would not have existed without this specific inhibition against it, this being insurance, otherwise; but here there is a specific provision that says subrogation shall not exist on the death benefit.)

The reason the Legislature made the provision is obvious from what has hereinbefore been said. The employer got a definite benefit when the Legislature took away from the persons who get the death benefit their right to sue the employer for wrongful death caused by the employer's negligence; so, of course, the provision is not arbitrary and capricious.

■ It is also obvious, therefore, that there is no constitutional question involved here. The right of the Legislature not to give the right of subrogation is unquestionable and its right to provide specifically against it is in no manner arbitrary and capricious. On the other hand, to permit subrogation, and this no doubt is the reason the Legislature did not permit it, would amount to this in at least many cases: a negligent employer, who theretofore was suable in an unlimited amount, would be permitted to recoup the $13,500.

The cases cited by the petitioners are cases that arose under the Workmen's Compensation Law before the amendment of the Constitution and the passage of the act providing a death benefit and have absolutely no bearing on the question before

us and none of them shed any light on the question. The right of subrogation at common law, or under our statute, never existed in any case such as we have here except by specific provision of the Legislature as to specific injuries as set forth, supra, because the insurance required is in the nature of accidental death insurance. The Legislature can take away a common-law right, 12 O.S.1951 § 2; Harrington v. Miles, 11 Kan. 480, 15 Am.Rep. 355, if it exists unless in doing so the act by which the right is taken away can be said to be arbitrary and capricious, which certainly cannot be said here because as pointed out above the employer got a very great advantage when the Legislature fixed on him a liability of only $13,500 for death, which in some cases would be negligent death.

This court has heretofore given a definition of the doctrine of subrogation in State ex rel. Com'rs of Land Office v. Mobley, 208 Okl. 342, 255 P.2d 945, 948, opinion by Welch, J., as follows:

"The doctrine of subrogation is governed and controlled in its operation by principles of equity, rather than by strict legal rules, and one of the conditions of subrogation in all cases, in the absence of specific contract, is that the subrogee discharge the obligation of another for the protection of his own rights."

citing 50 Am.Jur., Subrogation, 10, and Johnson v. Gillett, 66 Okl. 308, 168 P. 1031. Under this definition the employer could have no subrogation at common law, for by paying the death benefit he does not discharge the obligation of another for the protection of his own rights; he is bound to pay the death benefit regardless of whether the death may have been caused in whole or in part by the wrongful act of another; he is absolutely bound to pay the death benefit when an accidental death of an employee arises out of and in the course of an employment covered by the Workmen's Compensation Law.

▇ There is no inhibition at common law or otherwise against the recovery of a death benefit on the basis here provided and a recovery for wrongful death. It is not a double recovery because there are two causes of action, based on entirely different grounds.

▇ No one contends here that the death benefit provision is not constitutional. That was decided in Capitol Steel & Iron Co. v. Fuller, 206 Okl. 638, 245 P.2d 1134. The only contention now made is that the provision denying subrogation is unconstitutional because it abrogates the right of action of employers for damages on account of liability imposed upon them by the negligence of third parties and amounts to a taking of their property without due process of law. This contention is not tenable, for as pointed out above, the liability is not imposed upon the employer by reason of the negligence of third parties but is imposed regardless of negligence of anybody, whether the negligence of the employer himself or a third party, when an employee is killed in an accident arising out of and in the course of an employment covered by the act, and is in the nature of insurance. The liability imposed, as is true in all Workmen's Compensation Acts, is for decreased earning capacity or disability arising out of an accident occurring in an employment specifically classified as hazardous in the act and not damages for a tort.

No doubt the employers who fall within the purview of the Workmen's Compensation Law have paid premiums for accidental death without subrogation; as pointed out above the specific liability for death under the act is exclusive and such employers can no longer be sued under the wrongful death statute, supra. There is no other limitation on the maximum amount that dependent widows and orphans can receive for the death of their husband and father. Any such limitation except in favor of employers falling within the purview of the Workmen's Compensation Act would be unconstitutional. So, if subrogation had been provided by the Legislature such provision would have to be declared unconstitutional because in conflict with the provision of the consti-

tution which yet inhibits limitation of recovery for wrongful death.

Award sustained.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN and BLACKBIRD, JJ., concur.

WELCH, DAVISON, HALLEY and JACKSON, JJ., dissent.

DAVISON, Justice (dissenting).

I cannot agree with the statement of law contained in syllabus number 2, nor with the reasoning in support thereof contained in the opinion of the majority of the court in the instant case. Because any decision on the question involved has such a far-reaching effect, I feel that I should outline my views on the same.

I am firmly convinced that the opinion is contrary to the constitution and statutes of this State and the former opinions of this court. I cannot concur in the conclusions that, "the liability * * * is in the nature of insurance"; and "Without this provision (85 O.S.1951 § 44(a)) no employer and no insurance carrier would have had subrogation" (in cases of accidental injury not resulting in death); and "there is no inhibition at common law or otherwise against the recovery of a death benefit on the basis here provided (Workmen's Compensation Law) and a recovery for wrongful death. It is not a double recovery because there are two causes of action, based on entirely different grounds."

The first matter for consideration is the distinction between workmen's compensation with its death benefits and accident insurance. In the case of Clardy v. Grand Lodge of Oklahoma A.O.U.W., 132 Okl. 165, 269 P. 1065, 1066, insurance was properly defined as "a *contract* whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event." It was said in the case of Robinson v. Exchange Nat. Bank of Tulsa, D.C., 28 F.Supp. 244, 248, that insurance "is a *contractual* obligation". All courts are in accord that insurance liability must be one arising out of contract.

. Liability, on the other hand, of an employer for the payment of workmen's compensation, is a liability in the nature of damages for tort without the necessity of proof of negligence. It has no connection with contract but is an obligation arising from statute and is compulsory. "The recovery is without regard to negligence and is governed by a scale or rate fixed by the Legislature and is in lieu of wages". Parkhill Truck Co. v. Wilson, 190 Okl. 473, 125 P.2d 203, 206. The workman "is not paid for an injury. He is paid for a disability resulting in a decrease in wage-earning capacity." United States Casualty Co. v. Steiger, 179 Okl. 407, 66 P.2d 55, 57. Liability for compensation or for death benefits is in the nature of "a liability imposed * * * for damages and the nature of the award as 'damages' is not affected by the fact that the amount is fixed in advance by statute." Hagenah v. Lumbermen's Mutual Casualty Co., 241 Wis. 226, 5 N.W. 2d 760, 142 A.L.R. 1417.

One of the reasons, that compensation and death benefits are confused with insurance, is because of the section of the statutes, 85 O.S.1951 § 61, which requires the employer to secure the payment of compensation awards. It is there provided that such liability shall be secured by insurance, by guaranty, or by financial ability of the employer augmented by securities deposited or indemnity bond, if required. But, regardless of how it is secured, the liability remains primarily one of the employer. This court said in the case of Fowler v. Brooks, 193 Okl. 580, 146 P.2d 304, 305, that, "after compliance with 85 O.S.1941 § 42, an award of the Industrial Commission has the same force and effect and is subject to the same law as judgments of the District Court and may be enforced in the same manner." And, in the case of Atlas Wiring Co. v. Dorchester, 168 Okl. 337, 32 P.2d 913, 919; we said that "it was clearly the intent of the Legislature to make the employer primarily liable, and * * * securing insurance for the payment of awards

under the Workmen's Compensation Law does not relieve the employer from liability". See also Andrews v. English, 200 Okl. 667, 199 P.2d 202. The employer under the compensation law does not have a contractual liability but, rather, has a statutory liability without fault. That is true to a greater degree in cases where the injury results from the negligence of a third party.

It was said in the case of Parkhill Truck Co. v. Wilson, 190 Okl. 473, 125 P.2d 203, 206, that,

"Since a greater responsibility was placed, by said act, upon those conducting hazardous employments, 'for the benefit of their injured employes than that placed upon such employers under the common law, the Legislature made provision therein for the protection of employers and their insurance carriers operating within its purview. * * *

"It is apparent that the Legislature intended that before an injured workman, coming under the provisions of the Workmen's Compensation Act, whose injuries were caused by the negligence of a third party should be entitled to the extra-ordinary benefits of the act, he should be required to elect which liability he would pursue first. For the protection of his employer and insurance carrier who are obliged under the act to pay for injuries without regard to negligence, if an injured employe files a claim for compensation but desires first to proceed against the third party involved, he is required to assert such intention and assign his cause of action against the third party, under the rules to be prescribed by the Commission, so that in the event of recovery against the negligent third party the employer and insurance carrier may, to some extent, recoup their loss by reason of payments made for injury without regard to negligence."

In such situations, where the injury is the result of third-party negligence, we do not need to go to cases from other jurisdictions to determine whether or not, independent of the statute, 85 O.S.1951 § 44(a), an employer who pays compensation is subrogated to the rights of the employee as against the third-party tort-feasor. In the case of Stinchcomb v. Dodson, 190 Okl. 643, 126 P.2d 257, 259, the question was squarely before this court and it was held that,

"Where the negligence of defendant resulted in injuries to one subject to the provisions of the Workmen's Compensation Law who received an award of compensation for disability resulting from the injuries, which award was paid by the insurance carrier of the employer of the injured workman, said insurance carrier may maintain an action in its own name against defendant for indemnity, which right is independent of the provisions of 85 O.S.1941 § 44, relating to assignments of such causes of action to the insurance carrier."

The purpose of the statute was not to provide for subrogation but was to provide a mode of procedure to protect the employer and his insurance carrier in their right of subrogation. The assignment therein provided for

" * * * is required for the protection of only the employer and insurance carrier and does not work an outright assignment of the cause of action. This entire section of the act was enacted to accomplish the avowed purpose of protecting the employer and insurance carrier by giving them notice of the intention of the injured workman, according to the prescribed rules of the Industrial Commission, so that they can follow him in the prosecution of his common-law action. The election to sue the third party or take compensation, filed with the Industrial Commission as prescribed by it and the assignment of the cause of action in whatever form prescribed by the Industrial Commission together constitute the expressed or avowed intention of the injured workman * *." Parkhill Truck Co. v. Wilson, supra.

And in the body of the Stinchcomb v. Dodson case, supra, it was said,

" 'It is a well-recognized rule, supported by a great weight of authority, that, where one has been subjected to liability, and has suffered loss thereby, on account of the negligence or wrongful act of another, the one has a right of action against the other for indemnity. * * * And this is no less the rule where the liability imposed is statutory. Travelers' Ins. Co. v. Great Lakes Eng. W. Co., supra [6 Cir., 184 F. 426, 36 L.R.A.,N.S., 60]; Dayton Power & Light Co. v. Westinghouse E. & Mfg. Co., supra [6 Cir., 287 F. 439, 37 A.L.R. 849]. In Washington Gaslight Co v. District of Columbia, supra [161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712], the Supreme Court laid down the general rule, fortified by citation of much applicable authority, that one may recover damages which he has been compelled to pay over because of the negligence of another.' "

Although the above quoted cases were decided prior to the passage of the death benefit act, that act and the constitutional amendment authorizing it were meant,

"To place a death action upon the same footing as a personal injury action when each arose by reason of accidental injury in the course of employment covered by the Workmen's Compensation Act. * * * The 1950 constitutional amendment did not authorize the Legislature to make a distinction in the applicability of any provision of the Workmen's Compensation Law based upon whether or not the injury resulted in death except as to the amount of recovery. Therefore, any provision contained in said House Bill No. 312 which makes such distinction is unconstitutional and void to that extent. For the same reason, any provision in said act which modifies the provisions of sections 1053 and 1054 of Title 12 O.S.1941, except to 'provide an amount of compensation under the Workmen's Compensation Law for death resulting from injuries suffered in employment covered by such law,' is also void." Capitol Steel & Iron Co.

v. Fuller, 206 Okl. 638, 245 P.2d 1134, 1139.

The death benefit provisions are more widely distinguishable from insurance than are the original compensation provisions. Insurance would be payable to the beneficiary upon the death of the employee but, under the death benefit act, "no recovery can be had for the death of an employee, by claimants, who have suffered no pecuniary loss thereby". Sample v. State Ind. Comm., Okl., 262 P.2d 889, 890; Jaggers v. Newton Barrett Drilling Co., Okl., 268 P.2d 285. In order for a claimant to get a death benefit award, it is necessary "to allege and prove the existence of the beneficiaries named in the statute to whom the action survives in the case of wrongful death and in addition thereto it is necessary to prove pecuniary loss." Equels v. Tulsa City Lines, 194 Okl. 79, 147 P.2d 460, 461; Earley v. State Ind. Comm., Okl., 269 P.2d 977.

There is nothing harsh in this rule nor does the conclusion follow that the dependents of the deceased employee are penalized thereby. Under the wrongful death statutes, 12 O.S.1951 §§ 1053 and 1054 they could not recover from the negligent third party and again from the employer even in cases of gross negligence by both. In the case of Cain v. Quannah Light & Ice Co., 131 Okl. 25, 267 P. 641, 643,

"It is argued that the plaintiff did not intend to recover her full damages in her former suit against the gypsum company, that the judgment rendered was an agreed judgment intended only as a compromise and a release of the gypsum company, without prejudice to the rights of the plaintiff as against this defendant, and that the judgment so provides.

"The answer is: The question here involved is not a question of plaintiff's intention; it is a question of her legal right to split her cause of action, to apportion her damage, and to recover by separate actions separate portions thereof. Plaintiff had but one cause of action. This cause of action, of course, existed against all wrongdoers,.

but it was a single cause of action, and when suit was filed on this cause of action and damage in the sum of $7,500 claimed as her full damage, and such claim reduced to judgment, the cause of action then merged in the judgment, and the satisfaction of the judgment was a satisfaction and settlement of the cause of action.

"The plaintiff, having no legal right to split her cause of action, the court by its judgment could not legally grant such right, if, in fact, it so intended. It must be borne in mind that it is not the rendition of the judgment that operates as a bar, but it is the satisfaction thereof. If the court, by its judgment, intended to reserve to the plaintiff the right to proceed against this defendant, after full and complete satisfaction of the judgment, this portion of the judgment would be inoperative as beyond the power of the court to render. Plaintiff, having by her first suit claimed her entire damage to be $7,500, and having recovered judgment for the same and received payment in full satisfaction thereof, is now barred from maintaining this action against the defendant."

The only change made in that rule of law by the death benefit act is recognized and defined in the Capitol Steel & Iron Co. case, supra, as follows:

"The amount recoverable is measured by the pecuniary loss each sustains by reason of the death. The total amount of such recovery is now fixed at $13,500 by the Workmen's Compensation Law as authorized by the 1950 amendment to Art. XXIII sec. 7, Const."

So, if the recovery from the third-party tort-feasor is less than $13,500, the difference is recoverable from the employer under the death benefit provisions. This is in harmony with the same rule which applies to compensation for injuries only. State Highway Department v. Elledge, 202 Okl. 1, 209 P.2d 704. If, however, the net recovery from the third-party tort-feasor is more than $13,500 no recovery can be

had against the employer. The same rule as to compensation for injuries only was applied in the case of Canode v. Claypool & Wheeler, 86 Okl. 262, 207 P. 974.

Since section 44 of the Workmen's Compensation Act is the only section thereof dealing with those situations where the injury suffered is a result of third-party negligence, it is an integral part of the entire act; subsec. (a) as to injuries; subsec. (b) as to death. If subsec. (a) was unconstitutional the entire Workmen's Compensation Act was unconstitutional. It has been held to be otherwise and need not be here considered. If subsec. (b) is unconstitutional the entire death benefit act is unconstitutional. The latter violates both the State Constitution and the Federal Constitution in that it violates the "due process" and "equal protection" provisions of both unless it is an exercise of the police power and also a proper exercise thereof. To be within the police power it must be "essential to the public safety, health, and morals." Adams v. Iten Biscuit Co., 63 Okl. 52, 162 P. 938, 941. To be a proper exercise it must be "neither unreasonable, capricious, nor arbitrary, and it must fairly tend to accomplish the purpose of its enactment, and must not go beyond the reasonable demands of the occasion." State ex rel. Roth v. Waterfield, 167 Okl. 209, 29 P.2d 24. The opinion of the majority of the court lightly skips over these requirements with a mention of only a part of them. With this, I do not agree.

By inference, the Legislature has said that, in case of the death of an employee from an industrial accident, a recovery of $13,500 by his dependents meets the "reasonable demands of the occasion." A total recovery of more than that amount when a part thereof is by enforcement of liability without fault as against the employer is not a proper exercise of the police power but is a taking of his property without due process of law. If 85 O.S.1951 § 44(b) does that, it is unconstitutional and, being a integral part of the death benefit act, the entire act is unconstitutional. In my opinion the interpretation, giving to said section the meaning outlined in the majority opinion, does just that.

But,

"A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubt as to its constitutionality.

"Where a statute is ambiguous or the literal meaning of the statute would lead to absurd consequences which the Legislature probably did not contemplate, the courts must presume that such consequences were not intended, and should adopt a construction that is reasonable and will avoid an absurdity." Brown v. State Election Board, 197 Okl. 169, 170 P.2d 200.

It is my further opinion that, if said section 44(b) is given the interpretation contained in the majority opinion, then the section is in violation of, and beyond the authority granted by, the 1950 amendment to Art. XXIII, § 7, Okl.Const. It was pointed out in the Capitol Steel & Iron Co. v. Fuller case, supra, that,

"The sole and only authority of the legislature, to adopt said House Bill No. 312 or any legislation upon the subject of actions for death, is contained in Article XXIII sec. 7 of the Oklahoma Constitution, as follows:

" 'The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation.' "

Which was amended, by a vote of the people on July 4, 1950, in that the following proviso was added thereto, to-wit:

" ' * * * provided however, that the Legislature may provide an amount of compensation under the Workmen's Compensation Law for death resulting from injuries suffered in employment covered by such law, in which case the compensation so provided shall be exclusive.' "

The Fuller case, as above quoted also determined the effect of the amendment. It did not authorize the Legislature to abrogate any rights of subrogation that might exist in cases of payment of losses resulting from a wrongful death. The procedure for the protection of those rights, however, has always been a matter for legislative regulation and was never governed by said constitutional provision, before or after amendment.

Before the enactment of the Workmen's Compensation Act, only a small percentage of employees and their dependents, who were deprived of a part or all of their wage income because of industrial accidents, had any recourse in the courts of law, because of the impossibility of establishing primary negligence. True, the individual recoveries were not limited in amount. But the vast majority of the unfortunate could recover nothing. The courts have gone far to uphold legislation aimed toward relief from the tragedies resulting from the mechanized industry of today. Workmen's compensation with its death benefits forms a bulwark protecting the crippled, the maimed, the widowed, and the orphaned from the miseries of hunger and cold and medical neglect. Authority exists for such laws because these unfortunate ones would, without delay, become objects of charity and charges on the public generally. To endanger the constitutionality of the entire death benefit act for the purpose of allowing what amounts to a double recovery in a few of the cases is, in effect, to jeopardize the bread, the fuel, the shelter and the medicine of the many for the possible enlarged recovery of the few. No law, which is authorized only because of the police power and the public welfare, should be so interpreted especially when another interpretation, which is more logical and sound, will bring the act well within the authorization of the Constitution.

Let us then look to the questioned section, 85 O.S.1951 § 44(b):

"(b) There shall be no subrogation to recover money paid by the employer or his insurance carrier for death claims or death benefits under this Act from third (3d) persons, with all common law rights against other than the employer and his employees preserved and to be in those persons who would have had such rights had there been no death claim or death benefits under this Act."

It is my conclusion that,

The provisions of 85 O.S.1951 § 44(a), do not grant any right of subrogation. They provide the preliminary and procedural steps, prerequisite to the fixing of liability under the Workmen's Compensation Law for personal injuries, not resulting in death, caused by the negligence of a third party. They are for the *protection* of the employer and the insurance carrier in their *right* to subrogation. Parkhill Truck Co. v. Wilson, supra. The protective provisions of Section 44(a), are not extended to, and do not cover, cases of injuries resulting in death. In other words, the employer and insurance carrier are not so protected in their rights of subrogation if the employee dies from the effects of the injury. As above pointed out, their *right* of subrogation exists independent of the statute but the procedure for the *protection of that right,* which exists only by statute, is denied them by the provisions of Section 44(b).

Applying the conclusion to the case before us, the claimant, Susan Updike, was entitled to an award against respondents, but the amount thereof should have been fixed at the difference between $13,500 and her net recovery in the death action against the third-party tort-feasor. The record before us discloses only the gross recovery of $10,000 but does not disclose how much of that amount was used as expenses and attorney's fees in effecting the recovery. Further evidence before the Commission would no doubt supply the deficiency.

I feel that the constitutional amendment involved herein is very wholesome. I don't think that the interpretation given by the majority opinion is in line with the thoughts of the voters when said constitutional amendment was adopted. I don't think we should jeopardize the excellent piece of legislation by having it declared unconstitutional by the Supreme Court of the United States.

For these reasons, I therefore respectfully dissent.

I am authorized to state that WELCH, HALLEY, and JACKSON, JJ., concur in the views herein expressed.